RIMAL ZIEVE v. HOLSTAD COFFEE COMPANY.[1]

December 31, 1936.

No. 31,107.

1Reported in 270 N. W. 581.

*Alvin B. Christofferson* and *James E. Markham,* for appellant.
*Louis Sachs* and *Stanley V. Shanedling,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff prevailed in his action to recover a claimed balance under the terms of an express contract. Defendant's motion for amended findings or new trial was denied, and it appeals.

In 1909 plaintiff entered into an agreement with S. H. Holstad & Company whereby he was to furnish that company with fruit and flavoring extracts and was to pack and deliver the same for and to it under labels and in containers bearing its name and advertising. For that purpose he was to prepare or procure dies, electros, labels, label cuts, containers, and cartons, all bearing its name and advertising insignia. The company agreed to pay for such items when and as ordered by it and by plaintiff furnished. In addition thereto, in the event either party desired to discontinue that arrangement, it was agreed that all remaining dies, electros, label cuts, labels, containers, and cartons acquired or prepared for the company which remained unused in plaintiff's hands were to be delivered to the company and by it paid for at actual cost to plaintiff. The parties continued amicably in this relation until 1929. At that time a transfer was made by the company to the present defendant of "all of the stock of merchandise owned by" it in its establishment "or stored in warehouses, including cartons, bags, and all of its other chattels of every kind and nature whatsoever, * * * exclusive of accounts receivable." (Defendant's exhibit 3.) By its exhibit 2 defendant also acquired the "trade marks, trade names and good will" of the company.

The business relations between plaintiff and defendant began shortly after the transfer and continued from that time until

April, 1933, when plaintiff was informed that defendant would no longer purchase the extracts or other products manufactured by him. It ordered and directed that he deliver the involved items remaining in his hands to one of his competitors. In conformity therewith, plaintiff duly delivered to such competitor all items of property then in his hands and duly listed and enumerated all of the same, including as well the cost thereof. There is no issue raised that this delivery was not in conformity with defendant's notice and requirements. Each item and the cost thereof was set forth upon plaintiff's exhibit C, in form and substance a statement of account, and sent to defendant. Plaintiff testified that the secretary of defendant "promised me two or three times" that a check would be sent "but he didn't do it." The bill was in the total sum of $242.01. The court found that this sum was the "actual cost to plaintiff" of the enumerated, listed, and delivered items. Upon these findings the court, as conclusions of law, ordered judgment for plaintiff with interest and costs.

The vital question for decision is whether the evidence in the case justifies the findings. Defendant does not question the relationship existing between the original parties, plaintiff and S. H. Holstad & Company. Likewise it is conceded that the same relationship, as to manufacture and delivery of the same or similar goods, continued with defendant until April, 1933.

Defendant presents the issues thus:

"The position of the appellant may be stated briefly as follows:

"1. The action is brought to recover an amount alleged to be due under the terms of an express contract between plaintiff and defendant.

"2. In order to recover, plaintiff must necessarily prove that such a contract was made.

"3. The testimony wholly fails to establish the existence of any contract between plaintiff and defendant—in fact, it establishes beyond all doubt that the alleged contract did not exist."

From what has been said it seems to be clearly established that as between plaintiff and S. H. Holstad & Company there was

an express contract under which the parties thereto had conducted their business relations over a period of nearly 20 years. As between them the contract was in full force and effect when defendant came into the picture. The controversy therefore settles down to the simple issue of whether defendant stepped into the shoes of the Holstad company. That plaintiff so thought and relied upon the former relationship as a continuing one likewise appears established. He testified that shortly after the sale to defendant had taken place he was informed by Holstad of that fact; that the latter "would be with the new company for some little time and he would still do the ordering and he would call me up. He told me that the new company would continue to operate with me and deal with me the same as himself." Some time later Mr. Whiteford, admittedly an authorized representative of defendant, went to see plaintiff about their future dealings. A brief quotation from the record is of value:

Q. "What was your conversation with Mr. Whiteford?

A. "Mr. Whiteford came up and introduced himself.

Q. "What did he say?

A. "That he had talked with Mr. Holstad and he came up to tell me they wanted to continue business with us on the same terms as I had been doing with Mr. Holstad.

Q. "Anything else said?

A. "I told him that would be perfectly satisfactory to me, under the same terms.

Q. "What did he say?

A. "He said that was all right.

Q. "Did he say anything else to you?

A. "No, there was nothing else discussed."

This testimony is corroborated by other competent evidence. There is no testimony in the record questioning plaintiff's proof in this matter, so there can be no issue now in respect thereof.

Unquestionably defendant could adopt the contract as originally made and by so doing become obligated in the same manner and exactly to the same extent as the Holstad company was bound.

In view of the facts related, we think that is precisely what it did. It continued to deal with plaintiff "on the same terms" as plaintiff "had been doing" with the Holstad company theretofore. This was not a matter of short duration either, but extended over a period of more than three years. When defendant concluded to deal with plaintiff's business competitor it ordered plaintiff to turn over all items of property involved in this litigation. Plaintiff did so and later sent defendant a bill for the cost thereof. Defendant's secretary "promised me two or three times" that a check would be forthcoming "but he didn't do it." This failure is what brought on the present action.

Defendant seems to think that all it did was to agree with plaintiff that it would continue to buy extracts from him as and when it wanted them; that as "no period of time was fixed," and, as "no consideration passed or existed," there was and could be no liability on its part. But if it took over the Holstad company's end of the deal, as appears abundantly established, the burdens going with same necessarily followed. It could not take a part deemed by it to its advantage and get rid of the other part without plaintiff's knowledge and consent thereto.

What the court said in Dybvig v. Minneapolis Sanatorium, 128 Minn. 292, 294, 150 N. W. 905, 906, is applicable to the present case:

"It may be conceded that plaintiff was bound to establish an express contract, or fail in her suit. But such form of contract may be inferred from the acts of the parties as well as their spoken words. Musgrove v. City of Jackson, 59 Miss. 390, 392; Keener, Quasi Contracts, 4; Clark, Contracts, § 3; 9 Cyc. 245b. And the contract here involved belongs to that class described by Mr. Leake as being 'of a mixed character in respect to the mode of making them, that is to say, partly expressed in words and partly implied from acts and circumstances." Leake, Contracts, 8. Both are to be taken into account in determining whether a contract was made; the law imputing to a person an intention corresponding to the reasonable meaning of his words and actions."

In Restatement, Contracts, § 5, it is said:

"Except as stated in § 72(2), a promise in a contract must be stated in such words either oral or written, or must be inferred wholly or partly from such conduct, as justifies the promisee in understanding that the promisor intended to make a promise.

"*Comment:* a. Contracts are often spoken of as express or implied. The distinction involves, however, no difference in legal effect, but lies merely in the mode of manifesting assent."

And in Benedict v. Pfunder, 183 Minn. 396, 400, 237 N. W. 2, 4, Mr. Justice Stone wrote:

" 'Words are not the only medium of expression. Conduct may often convey as clearly as words a promise or an assent to a proposed promise, and where no particular requirement of form is made by the law a condition of the validity or enforceability of a contract, there is no distinction in the effect of a promise whether it is expressed (1) in writing, (2) orally, (3) in acts, or (4) partly in one of these ways and partly in others.' Restatement, Contracts, American Law Institute, § 21.

"The distinction between an express contract and one implied as of fact involves 'no difference in legal effect, but lies merely in the mode of manifesting assent.' Id. § 5. It is not the subjective thing known as meeting of the minds, but the objective thing, manifestation of mutual assent, which is essential to the making of a contract. 'Not mutual assent but a manifestation indicating such assent is what the law requires.' Id. § 20. [Citing cases.]" See also McArdle v. Williams, 193 Minn. 433, 258 N. W. 818.

Considering the entire record, we are of opinion that the evidence sustains the findings, and the order here for review is therefore affirmed.