## BERGSTEDT, WAHLBERG, BERQUIST ASSOCIATES, INCORPORATED v. KENNON V. ROTHCHILD AND ANOTHER.

225 N. W. 2d 261.

January 17, 1975—No. 44709.

*Vogel, Nemo, Chrysler & Stapleton* and *Roger R. Lenzmeier,* for appellants.

*M. D. Zeddies,* for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

This appeal arises from an action on implied contract for an architectural fee tried to the court without a jury. Plaintiff was awarded the sum of $29,823.25. Defendants appeal from the denial of their post-trial motion for a new trial. We affirm.

Plaintiff, Bergstedt, Wahlberg, Berquist Associates, Inc., is a Minnesota corporation in the business of furnishing architectural services. Defendants include Kennon V. Rothchild, individually, and Hanover Ramp, a partnership composed of

Kennon V. Rothchild, Richard M. Vogel, and Jefferson Lines, Inc. In the transaction out of which the litigation arises, Rothchild alone appears to have represented defendants.

Defendant Hanover Ramp is the owner of a seven-story parking ramp located in St. Paul. The existing parking ramp was not a financial success, and in 1965 defendants became interested in the possibility of erecting additional stories on top of the Hanover Ramp for commercial purposes.

In February 1965 a conference was held between Clark Wold, an architect and officer of plaintiff, a leading architectural office building designer in St. Paul, and Kennon V. Rothchild to discuss the feasibility and nature of the proposed Hanover Ramp addition. There was no agreement as to fee arrangements at that time. In the spring of 1965 Rothchild was advised by plaintiff that office space could be added to the existing structure. Wold testified that at no time did Rothchild ever talk to him about the fee for architectural work being based on any contingency as to eventual cost. According to Wold, cost estimates were discussed but not in terms of a limitation beyond which the cost could not go. Rothchild also never indicated that services would not be paid for if the building was not built.

On May 26, 1965, Wold wrote to Rothchild setting forth the fee arrangement for plaintiff's architectural work for the Hanover Ramp. The arrangement provided for actual costs plus a fee of 25 percent of such costs. The letter contained a provision that "if and when it is determined that the project shall proceed, you have the option of continuing this fee basis or using one of the standard AIA-owner agreements with the amount extended applied to the total fee." The letter contained a space for Hanover to sign indicating agreement with the terms stated. Rothchild received the letter but never signed the agreement.

Plaintiff regularly consulted with Rothchild concerning its progress, and kept him informed of new developments. In March 1965 Charles Wahlberg, one of plaintiff's officers, wrote to Rothchild concerning meetings with St. Paul building officials. In

May 1965 Wahlberg concluded a letter to Rothchild by saying, "If you are in agreement with this concept we shall proceed with further development of preliminary drawings at that point which will enable you to seek financing." By letter dated June 2, 1965, Rothchild replied, "I have reviewed the sketches and agree that this represents a good approach to the problem." In the same letter, Rothchild made specific suggestions as to the treatment of the stairways and entryway. Informal progress meetings involving the nature and scope of the project continued through June and July 1965.

Wahlberg testified that in June or July 1965 plaintiff had developed preliminary drawings for the Hanover Ramp project to the point where it was possible to obtain a preliminary estimate as to the probable cost of the project. On July 22, 1965, Wahlberg sent Rothchild a detailed estimate of construction costs totaling $745,500. The letter indicated that the general, mechanical, and electrical construction estimates were prepared by outside firms consulted by plaintiff.

Plaintiff started billing in July 1965 and continued to bill throughout 1965 and 1966. On October 18, 1965, Rothchild wrote a letter to Wahlberg requesting that the billing done on the project be sent in the name of Hanover Ramp. Defendants made a payment of $5,000 in July 1966. Plaintiff's final bill was in the amount of $34,823.25, less the $5,000 paid. A total of $29,823.25 remains unpaid.

Bids were opened in July 1966 and totaled in excess of $931,000. Rothchild thereafter orally advised Wahlberg that defendants could not proceed with the project on the basis of the bids received. In September 1966 plaintiff prepared alternative proposals to reduce the cost of the addition. In October 1967 Rothchild wrote Wahlberg, mentioning for the first time in writing a specific limitation on construction costs. The Hanover Ramp addition was subsequently built, but the extent to which plaintiff's plans were ultimately utilized is not clear.

Plaintiff brought this action to collect the amount due, claiming breach of an implied contract. The trial court found that plaintiff performed architectural services for defendant Hanover Ramp at the request of defendant Kennon V. Rothchild between March 1, 1965, and May 1, 1967. The trial court further found that the parties had entered into an agreement providing that plaintiff was to be paid its costs plus 25 percent, and ordered judgment for plaintiff in the sum of $29,823.25. Defendants moved for a new trial and appeal from a denial of that motion.

On an appeal from a denial of a motion for a new trial, it is not the province of the reviewing court to reconcile conflicting evidence or to solve doubts arising therefrom. Templin v. Crestliner, Inc. 263 Minn. 149, 116 N. W. 2d 178 (1962). On the contrary, we have repeatedly held that, in the absence of a jury, findings of fact shall not be set aside unless clearly erroneous and that due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. Furuseth v. Olson, 297 Minn. 491, 210 N. W. 2d 47 (1973); State, by Head, v. Paulson, 290 Minn. 371, 188 N. W. 2d 424 (1971); Rule 52.01, Rules of Civil Procedure.

It is settled law in Minnesota that where the evidence fails to disclose an express agreement, the law may imply a contract from the circumstances or acts of the parties. Deane v. Hodge, 35 Minn. 146, 27 N. W. 917 (1886); Benedict v. Pfunder, 183 Minn. 396, 237 N. W. 2 (1931); Balafas v. Balafas, 263 Minn. 267, 117 N. W. 2d 20 (1962). Words are not the only medium of commercial expression, and no legal distinction can be made in the effect of a promise whether it is expressed in writing, orally, in the acts of the parties, or in a combination of means. It is the objective thing, the manifestation of mutual assent, which is essential to the making of a contract. Zieve v. Holstad Coffee Co. 198 Minn. 580, 270 N. W. 581 (1936); Capital Warehouse Co. v. McGill-Warner-Farnham Co. 276 Minn. 108, 149 N. W. 2d 31 (1967). Whether a contract is to be implied in fact is usually a question to be determined by the trier of fact as an inference of

facts to be drawn from the conduct and statements of the parties. Roberge v. Cambridge Co-op. Creamery, 248 Minn. 184, 79 N. W. 2d 142 (1956).

The record in this case is replete with evidence that clearly supports the existence of a contract implied in fact between the parties. Rothchild worked closely with plaintiff between about March 1, 1965, and May 1, 1967, on the project. Rothchild initiated contact with plaintiff, was kept informed of its progress, accepted its sketches, suggestions, and plans, and at all times accepted the benefits of plaintiff's services. In short, a normal architect-client relationship was maintained during this period.

Not only the existence of a contract, but also the terms and construction of that contract are questions of fact to be determined by the factfinder. Hughes v. Becker, 260 Minn. 83, 108 N. W. 2d 781 (1961); Hartung v. Billmeier, 243 Minn. 148, 66 N. W. 2d 784 (1954). In this case the trial judge adopted plaintiff's understanding of the terms of the relationship, namely, that its services were to be reimbursed by the measure of its costs plus 25 percent. Defendants argue that the agreement was only to study the feasibility of the Hanover Ramp addition, and in the event the construction cost exceeded $700,000, the parties were agreed to limit the architectural fee to $5,000. The finding of the trial court, however, is amply supported by the evidence.

Defendants participated in, were kept informed of, and acquiesced in the development of the Hanover Ramp plans far beyond a mere feasibility study. In fact, it was not until October 23, 1967, that defendants mentioned in writing their understanding of the cost limitation of the project of $700,000.

The basis of the charges made by plaintiff was its actual costs plus 25 percent, as set forth in the letter of May 26, 1965. While it is a fact that Rothchild never signed that letter, it does not follow that he did not acquiesce in its terms. Rothchild never returned the letter or stated that the arrangement was something different or that he would not be bound by it. Each bill sub-

sequent to the first billing specifically set forth the fee arrangement in the following words: "Architect's Fee—Architect's cost plus 25%," and no objection was ever made by Rothchild. When the payment of $5,000 was made in July 1966 by Rothchild, no letter was written and nothing else was said or done, or any complaint made, about the bill which at that time had reached the sum of $32,054.32. When Rothchild did write about the billing it was not to protest, but rather to request that billing be made to Hanover Ramp.

Other arguments raised by defendants are totally without merit, and it is not necessary to discuss them here. There being sufficient evidence to support the findings of the trial court in all respects, that judgment is hereby affirmed.

Affirmed.

MR. JUSTICE MACLAUGHLIN took no part in the consideration or decision of this case.