ACTION TIME CARPETS,
INC., Respondent,

v.

MIDWEST CARPET BROKERS,
INC., Appellant.

No. 47893.

Supreme Court of Minnesota.

Sept. 15, 1978.

Rehearings Denied Nov. 8, 1978.

Bloedel, Nelson, Slade, Volstad & Hawkinson, Minneapolis, for appellant.

Stringer, Donnelly, Courtney, Cowie & Rohleder and Owen Sorenson, St. Paul, for respondent.

Heard before PETERSON, SCOTT, and GODFREY, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from a judgment entered against defendant Midwest Carpet Brokers, Inc. (Midwest), in an action for breach of contract brought by plaintiff Action Time Carpets, Inc. (Action Time). We affirm in part and reverse in part, and remand for further proceedings.

In December 1972, Midwest entered into a contract with the Darrel Farr Development Corporation (Farr) to furnish and install 7,000 yards of carpet in a 96-unit apartment building Farr was constructing in St. Cloud, Minnesota. Samuel J. Peraro, Midwest's president, delayed ordering the required carpet until the date of Midwest's performance was established more specifically, since he did not want to tie up corporate funds in inventory over a long period of time.

In a January 29, 1974, letter, Farr advised Midwest that the installation of the carpet was to commence on February 15, 1974. Peraro received this letter on February 1, 1974, and immediately contacted Samuel J. Cavallaro, a self-employed manufacturer's representative who represented

plaintiff Action Time. On the same day, Cavallaro came to Midwest's shop where Peraro asked him if he could copy the texture and color of a certain carpet Peraro desired to order. Cavallaro then telephoned Action Time at its office in Chattanooga, Tennessee. Action Time stated that the carpet would have to be specially dyed and that it could fill the order if the colors could be matched. Cavallaro told Action Time that this was a "rush order" since Peraro had told him the carpet was needed immediately. According to Peraro, immediately after the telephone call was completed Cavallaro told him that it would take a week to ten days to get the carpet after the color was verified. Peraro then gave Cavallaro samples of the carpet to be matched for color, and Cavallaro sent the samples by airmail to Action Time the same day with a note asking Action Time to "rush" the specially-dyed samples back.

Action Time sent the samples back to Cavallaro, who brought them to Peraro's shop on February 12, 1974. Peraro approved of the special dyes and signed a purchase order on one of Midwest's own purchase order forms. The purchase order called for 7,000 square yards of carpet—3,500 yards of gold and 3,500 yards of orange. Written in the blank to the right of the printed words "Date Required" were the words "at once." The purchase order also contained the written words "W/Letter of FHA Approved."

Upon completing the purchase order, Cavallaro called Action Time and told them that the color was approved and that he was mailing a written order. After receiving Midwest's purchase order, Action Time obtained a credit approval of Midwest and sent the order to Masterpiece Finishing, Inc. in Dalton, Georgia. Action Time did business by contracting with carpet manufacturers to fill its orders. The manufacturing records show that the order was completed in mid-March.

At the end of February, 1974, Farr cancelled Midwest's contract since Midwest had not begun installation in St. Cloud. Upon learning of the cancellation, Peraro claims to have telephoned Cavallaro and Action Time on March 1 or 2, 1974, to cancel Midwest's contract with Action Time. The cancellation was not confirmed later in writing. Around March 14, 1974, Peraro was notified by Action Time that the carpet was ready. He responded that it was no longer needed.

On April 3, 1974, Action Time's attorneys notified Midwest that it had breached the contract and that Action Time intended to resell the goods at a private sale and intended to hold Midwest responsible for damages. On April 10, 1974, William Brooks, Action Time's president at the time of the transaction, wrote a similar letter to Peraro.

Action Time sold a large quantity of the carpet which it claimed was identified to the Midwest contract. It then sued Midwest pursuant to Minn.St. 336.2–706(1) for damages measured by the difference between the resale price and the contract price, plus incidental damages.

At a trial to the court without a jury the district court held that Action Time was entitled to receive $3,705.56, which constituted "the difference between the contract price of carpet and the resale price of carpet identified to the contract, less any expenses saved because of defendant's breach."

On appeal, Midwest raises the following issues:

(1) Whether the trial court erred in finding that the time taken for the manufacture of the carpet was not unreasonable and in receiving evidence regarding the usage in the carpet industry of the term "at once";

(2) Whether the trial court erred in failing to find that Action Time had not identified conforming goods to the contract;

(3) Whether the trial court erred in failing to find that the private sales of carpet were not made in "good faith" or in a "commercially reasonable manner;"

(4) Whether the trial court erred in finding that all the carpet identified to the contract was sold.

1. In determining that Action Time did not breach the contract, the trial court found that the "time taken for the manufacture of the carpet was not unreasonable * * *." Midwest contends that this finding was erroneous since the purchase order called for delivery "at once" and since the parties allegedly orally contracted for delivery within 7 to 10 days. Midwest also argues that the trial court erred in admitting evidence of custom and usage in the carpet industry that the phrase "at once" meant "as soon as possible."

Action Time correctly asserts that the controlling legal principles are contained in the Uniform Commercial Code's parol evidence rule with respect to the sale of goods, which is codified at Minn.St. 336.2–202, as follows:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein *may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented*

(a) by course of dealing or *usage of trade (section 336.1–205)* or by course of performance (section 336.2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." (Italics supplied.)

In its attempt to establish that the parties agreed that the carpet was required to be delivered within 7 to 10 days, Midwest relies upon a representation by Cavallaro to Peraro on February 1 that Action Time could get the carpet to Midwest within 7 to 10 days from the time the color was verified and approved by Peraro and upon the fact that Action Time was told during the negotiations that this was a "rush" order. These conversations and representations, however, were made prior to the signing of the purchase order and thus were properly disregarded by the trial court, since Minn.St. 336.2–202 provides that terms contained in an agreement "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement * * *."

Midwest's argument that the court erred in receiving the testimony of Hazel Jerry Cline, Action Time's new president, that the phrase "at once" was used within the carpet industry to mean "as soon as possible" also fails since Minn.St. 336.2–202 expressly authorizes the receipt of "usage of trade" evidence to either explain or supplement the terms of a written agreement. "Usage of trade" is defined in Minn.St. 336.1–205(2), as:

" * * * any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. * * * "

The trial court thus properly received Cline's testimony, which explained the special meaning of the term "at once" throughout the carpet industry, and its finding that the time taken to manufacture the carpet was reasonable is supported by the evidence.

2. Midwest next asserts that the trial court erred in granting Action Time the remedy of selling the goods at a private sale and ordering Midwest to pay the difference between the resale price and the contract price pursuant to Minn.St. 336.2–706, since Action Time allegedly had not identified conforming goods to the contract pursuant to Minn.St. 336.2–704(1), which provides:

"(1) An aggrieved seller under the preceding section may

(a) *identify to the contract conforming goods* not already identified if at the time he learned of the breach they are in his possession or control;

(b) treat as the subject of resale goods which have demonstrably been intended for the particular contract even though those goods are unfinished." (Italics supplied.)

Thus, a prerequisite for invoking the remedy of resale pursuant to Minn.St. 336.2–706 is the identification of "conforming goods" to the contract. See, Comment 1 to U.C.C. § 2–704; Minnesota Code Comment to Minn.St. 336.2–704.

The purchase order called for the manufacture of 3,500 yards of each of two colors of carpet "W/Letter of FHA Approved." While Midwest introduced some evidence that the carpeting being manufactured did not meet FHA density standards, Action Time introduced evidence to the contrary; namely, a letter stating that the carpeting "meets or exceeds" minimum FHA standards.

 In reviewing decisions of a trial court sitting without a jury, it is not our function to reconcile conflicting evidence adduced at trial but rather to determine whether the trial court's findings are supported by the evidence. See, e. g., *Bergstedt, Wahlberg, Berquist Assoc. v. Rothchild*, 302 Minn. 476, 225 N.W.2d 261 (1975). A trial court's findings of fact will not be set aside unless clearly erroneous. Rule 52.01, Rules of Civil Procedure. In light of this conflicting evidence, we are compelled to hold that the trial court's failure to find that Action Time had not identified conforming goods to the contract prior to resale was proper and was supported by the evidence.

3. Midwest also contends that Action Time's private sales of the carpet were not made in "good faith" or in a "commercially reasonable manner," in violation of Minn.St. 336.2–706 which governs such sales, as follows:

"(1) Under the conditions stated in section 336.2—703 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. *Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price* together with any incidental damages allowed under the provisions of this article (section 336.2—710), but less expenses saved in consequence of the buyer's breach." (Italics supplied.)

 One of Midwest's major contentions in this regard is that Action Time sold a large amount of carpet at private sale prior to giving Midwest notice of the sale pursuant to Minn.St. 336.2–706(3). The trial court, however, did not include the amount of carpet sold prior to giving Midwest notice in the calculation of damages. Consequently, the damages assessed Midwest pursuant to Minn.St. 336.2–706 were based solely on the yardage sold subsequent to the giving of notice. We thus conclude that the sale was "commercially reasonable" and made in "good faith" as to the portion of the total carpeting used by the trial court in assessing damages.

 4. Midwest finally contends that the trial court's calculation of damages was based on the assumption that all the carpet identified to the contract was sold at private sale. In calculating the damages, the trial court multiplied the square yards of carpet identified to the contract that were sold after the giving of notice times the contract price per square yard. From this, it deducted the amount of commissions and freight expenses saved and the amount received from the resale of this amount of carpet. It follows that if not all the carpet was resold the damages assessed by the trial court would be in excess of the proper damages.

We have carefully reviewed the record and find that the trial court erred in finding that all the carpet was resold. Action Time's own records do not account for the disposition of all the carpet, and nothing else in the record shows that all the carpet was resold. We therefore remand this case to the trial court for further proceedings on the issue of the amount of carpet resold and calculation of the damages accordingly.

Affirmed in part; reversed in part and remanded.