**R & T EQUIPMENT, Appellant,**

v.

**Roy NASERS, Respondent.**

**No. C3–83–1562.**

Court of Appeals of Minnesota.

April 10, 1984.

Cyril J. Bernardy, Worthington, for appellant.

Joel C. Wiltrout, Worthington, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

In an action to recover the cost of replacing a defective combine beanheader control system, the trial court entered judgment for the purchaser/respondent. Appellant's contentions are that the findings are clearly erroneous; that the new system was an improvement ordered by respondent, and that the trial court disregarded the evidence "in preference to [the court's] own feelings that American industry disregards the consumer." We affirm.

## ISSUE

Was the trial court clearly erroneous in finding that respondent was not liable to appellant for the cost of replacing a beanheader control system on respondent's used combine?

## FACTS

In July 1981, Mr. Nasers bought a used combine equipped with a beanheader with a hydraulic header control from R & T Equipment. The hydraulic header control system was designed to activate based on sensors in the beanheader so that it would follow the contour of the ground as it was harvesting soybeans. The machine was delivered to Nasers' farm in September 1981. The first time the combine was used in the field the header control did not function. R & T mechanics came out at least three times and were never able to get the control to work properly.

It was not until the summer of 1982 that an R & T mechanic replaced the hydraulic header control with an electrical header control. The new system worked in the yard, but not in the field.

R & T Equipment charged Nasers $1,161.92 for replacing the hydraulic control. Nasers refused to pay. R & T brought a collection action against Nasers.

R & T claimed that Nasers wanted the electrical sensor control system because it allowed harvesting to be accomplished faster than did the hydraulic system and that it constituted an improvement on the machine for which the purchaser should pay. Respondent claimed that the work was done in response to his demand that they make the machine work.

The trial court found that the defective beanheader control was not corrected during the warranty period and thus R & T was required by the guarantee to repair it so that it operated correctly, even though the warranty period had run. Therefore, judgment was entered for Mr. Nasers.

## DISCUSSION

Upon announcing his decision, the trial court may have prompted this appeal by making the following "appellogenic" remarks:

I am rather disgusted with American industry at times with automobiles. When I buy something I expect the damn thing to work and I don't care if it costs the company. I just took General Motors to court with my son and they had to put a new engine in the kid's car. They fought me for eight months.

These remarks were intemperate, but not determinative of the outcome. The findings of the trial court have substantial evidentiary support in the record and therefore are not clearly erroneous. *Bergstedt, Wahlberg, Berquist Assoc., Inc. v. Rothchild*, 302 Minn. 476, 225 N.W.2d 261 (1975).

The evidence clearly shows that:

(1) the beanheader control never worked from the day the combine was delivered to Nasers' farm in September 1981;

(2) R & T Equipment sent out mechanics three times in 1981, but were never able to get the hydraulic control system to work and the harvest was done by manual controls;

(3) after the fall harvest of 1981, Nasers told the manager of R & T Equipment that he wanted the header to work;

(4) before the fall harvest in 1982, Nasers told R & T to fix the machine so that it operated correctly; at R & T's suggestion a new electronic sensor system was installed. Neither party admits agreeing to bear the cost; and

(5) a mechanic for R & T switched the hydraulic header control to an electrical header control. The new system did not work in the field.

The trial court concluded that as the faulty hydraulic sensor was not corrected during the guarantee period, R & T was required by the guarantee to fix it so that it operated correctly.

## DECISION

In light of the above evidence, the trial court's finding is not clearly erroneous. We affirm.

Affirmed.