*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1149**

Richard J. Hartfiel,
Appellant,

vs.

Raymond Wilburn Allison,
Respondent,

T. J. Potter Trucking, Inc.,
Respondent,

Westfield Insurance Company, intervenor,
Respondent.

**Filed January 25, 2016
Affirmed in part, reversed in part, and remanded
Schellhas, Judge**

Sherburne County District Court
File No. 71-CV-11-1331

William J. Krueger, William Krueger, P.A., New Brighton, Minnesota (for appellant)

Raymond W. Allison, Becker, Minnesota (pro se respondent)

William L. Davidson, Brian A. Wood, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota (for respondent T. J. Potter Trucking, Inc.)

Deborah C. Eckland, Scott R. Johnson, Goetz & Eckland P.A., Minneapolis, Minnesota (for respondent Westfield Insurance Company)

Considered and decided by Schellhas, Presiding Judge; Cleary, Chief Judge; and Randall, Judge.[*]

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the summary-judgment dismissal of his claims against respondent trucking company for negligent hiring and negligent retention of respondent employee. Appellant also argues that the district court erred by concluding that an alleged settlement agreement between appellant and respondent trucking company is unenforceable and by permitting the trucking company's insurance company to intervene in the action. We affirm in part, reverse in part, and remand.

## FACTS

Appellant Richard Hartfiel drove truck for respondent T. J. Potter Trucking Inc. as an independent owner-operator. Respondent Raymond Allison drove truck for Potter Trucking as an employee. On June 4, 2010, while Hartfiel was sitting in his truck at Potter Trucking, Allison attacked him with an approximately three-and-a-half foot steel bar.[1] Hartfiel suffered broken bones and other injuries and incurred over $75,000 in medical expenses. Hartfiel sued Potter Trucking in September 2011 for negligent hiring, negligent

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

[1] Allison was convicted of third-degree assault for the attack.

2

retention, and negligent supervision of Allison.[2] Potter Trucking's general liability insurer, respondent Westfield Insurance Company (Westfield), denied coverage for Hartfiel's claims.

On November 14, 2011, Potter Trucking sent a draft *Miller-Shugart* agreement to Hartfiel and, on November 16, informed Westfield by telephone that it was discussing a *Miller-Shugart* agreement with Hartfiel.[3] On November 21, Hartfiel sent Potter Trucking a revised draft of the *Miller-Shugart* agreement. On or about December 16, Potter Trucking orally accepted Hartfiel's revisions and informed the district court in writing that it had reached a *Miller-Shugart* agreement with Hartfiel and that it anticipated that the agreement would be executed "in the very near future." But on January 12, 2012, as a condition to signing the *Miller-Shugart* agreement, Hartfiel requested that Potter Trucking provide written notice to Westfield regarding Potter Trucking's intent to enter into a *Miller-Shugart* agreement with Hartfiel. Potter Trucking gave written notice to Westfield on January 13. On January 19, Potter Trucking informed Hartfiel that Westfield had not made a final decision but would be retaining defense counsel. Westfield thereafter retained defense counsel for Potter Trucking, and the parties' *Miller-Shugart* discussions ended.

---

[2] Hartfiel sued Allison for assault and battery and settled those claims, which are not the subject of this appeal. Hartfiel also asserted, but later abandoned, negligent supervision and vicarious-liability claims against Potter Trucking.

[3] A *Miller-Shugart* agreement takes its name from *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982). *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 278 n.1 (Minn. 1990). "In a *Miller-Shugart* settlement, the insured, having been denied any coverage for a claim, agrees claimant may enter judgment against him for a sum collectible only from the insurance policy. To be binding on the insurer if policy coverage is found to exist, the settlement amount must be reasonable." *Id.*

Hartfiel moved to enforce the *Miller-Shugart* agreement; Potter Trucking moved for summary judgment on Hartfiel's claims of negligent hiring, negligent retention, and negligent supervision; and Westfield moved to intervene. The district court granted Westfield's motion to intervene for the limited purpose of opposing Hartfiel's enforcement motion, denied Hartfiel's motion to enforce the agreement, and denied Potter Trucking's motion for summary judgment. Following additional discovery and Potter Trucking's second motion for summary judgment, the court granted summary judgment to Potter Trucking.

This appeal follows.

## D E C I S I O N

**Miller-Shugart** *agreement*

Hartfiel argues that the district court erred by concluding that the *Miller-Shugart* agreement between Hartfiel and Potter Trucking was unconsummated and unenforceable. "A settlement agreement is a contract, and the court examines the language of the agreement to determine the intent of the parties." *Curtis v. Altria Group, Inc.*, 813 N.W.2d 891, 901 (Minn. 2012). "Generally, the existence of a contract, as well as the terms of that contract, are questions of fact to be determined by the fact-finder." *TNT Props., Ltd. v. Tri-Star Developers LLC*, 677 N.W.2d 94, 101 (Minn. App. 2004) (citing *Bergstedt, Wahlberg, Berquist Assocs., Inc. v. Rothchild*, 302 Minn. 476, 480, 225 N.W.2d 261, 263 (1975)). "But where the relevant facts are undisputed, the existence of a contract is a question of law, which this court reviews de novo." *Id.*

4

"[T]o constitute a full and enforceable settlement, there must be a definite offer and acceptance with a meeting of the minds on the essential terms of the agreement." *Id.* at 100–01 (citing *Jallen v. Agre*, 264 Minn. 369, 373, 119 N.W.2d 739, 743 (1963)). "[W]here the offer is clear, definite, and explicit, and leaves nothing open for negotiation, it constitutes an offer, acceptance of which will complete the contract." *Short v. Sun Newspapers, Inc.*, 300 N.W.2d 781, 786 (Minn. 1980) (quotation omitted). Acceptance consists of an act that demonstrates "a manifestation of assent when evaluated under an objective standard." *Holman Erection Co. v. Orville E. Madsen & Sons, Inc.*, 330 N.W.2d 693, 695 (Minn. 1983). "'[T]o give rise to a binding contract, [the acceptance] must . . . comply *exactly* with the requirements of the offer.'" *Jacobs v. Cable Constructors, Inc.*, 704 N.W.2d 205, 208 (Minn. App. 2005) (alteration in original) (quoting *Minar v. Skoog*, 235 Minn. 262, 265, 50 N.W.2d 300, 302 (1951)).

Hartfiel argues that the draft *Miller-Shugart* agreement that he sent to Potter Trucking on November 21, 2011, was a definite offer that Potter Trucking accepted orally and then in writing by its December 16 letter to the district court. He further argues that Potter Trucking satisfied any condition precedent of notice on November 16, when it informed Westfield by telephone that it was discussing a *Miller-Shugart* agreement with Hartfiel. We disagree. Both drafts of the agreement exchanged by the parties in November 2011 included a paragraph providing that "notice of their intent to enter into this agreement was provided to [Westfield] on _____." The parties' agreed-upon inclusion of this provision contradicts Hartfiel's assertion that Potter Trucking's November 16 telephone call to Westfield constituted sufficient notice to Westfield. Moreover, Hartfiel's argument

5

that the November 16 telephone call to Westfield satisfied the notice requirement is undermined by his January 2012 request to Potter Trucking, as follows:

> In order to ensure the next steps in the process, *before your client signs the agreement*, we need any and all documents you've sent to [Westfield] saying you are in the process of negotiating a settlement with us and their responses. *The law, in order for us to succeed in the next stage of this suit (and for us to have our client sign the agreement with Potter [Trucking]) requires notification to [Westfield] that you have entered into negotiations with us and that they have still failed to intervene.* I know we have some letters denying the claim and you challenging their denial, but we do not have anything that says specifically that you are entering into settlement negotiations. If you could also resend those along with any other communication, it would ensure our client can sign the agreement as soon as your client does.
>
> If you haven't sent [Westfield] something saying they have X days to join into the suit or negotiations for settlement, please do so, let us know, and then let us know when that time expires what their response is. *Then we can proceed with signing the agreement.*

(Emphasis added.) In response, Potter Trucking provided Westfield written notice of its intent to enter a *Miller-Shugart* agreement with Hartfiel.

The undisputed facts show that both Hartfiel and Potter Trucking considered written notice to Westfield of their intent to execute a *Miller-Shugart* agreement to be an essential term of their settlement agreement. The November 21 draft agreement lacked this essential term and therefore was not a definite offer exhibiting a meeting of the minds on the essential terms of the agreement. As a result, Potter Trucking's December 2011 oral and written communications to Hartfiel and the district court did not operate as acceptances of the *Miller-Shugart* agreement and did not result in an enforceable contract.

6

Any offer and acceptance contained in Hartfiel's and Potter Trucking's subsequent communications were conditioned on Westfield's failure to act after receiving written notice of Hartfiel's and Potter Trucking's intent to enter a *Miller-Shugart* agreement. "A condition precedent . . . is any fact or event, subsequent to the making of a contract, which must exist or occur before a duty of immediate performance arises under the contract." *Nat'l City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 176 (Minn. 1989). "If the fact or event required by the condition precedent does not occur, there can be no breach of contract." *Id.* (quotation omitted). Here, the undisputed facts show that Westfield retained counsel for Potter Trucking within the time allowed in Potter Trucking's written notice to it. As a result, the condition precedent was not satisfied. The district court therefore did not err by concluding that no enforceable *Miller-Shugart* agreement existed.

***Summary judgment***

Hartfiel argues that the district court erred by granting summary judgment to Potter Trucking on his claims of negligent hiring and negligent retention because genuine issues of material fact exist, the court improperly weighed the evidence, and the court failed to properly apply the law.[4] "[Appellate courts] review a district court's summary judgment decision de novo. In doing so, [appellate courts] determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010); *see also* Minn. R. Civ. P. 56.03. "A fact is material if its resolution

---

[4] At oral argument, Hartfiel acknowledged that he had forfeited any argument that the district court erred by dismissing his negligent-supervision claim against Potter Trucking.

will affect the outcome of a case." *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn. 1996). "No genuine issue for trial exists when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *McKee v. Laurion*, 825 N.W.2d 725, 729 (Minn. 2013) (quotations omitted). "[Appellate courts] view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn. 2002).

*Negligent hiring*

Negligent hiring is the failure of an employer to use reasonable care in hiring individuals who, through the employment, may pose a threat of injury to members of the public. *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 911 (Minn. 1983). Liability for negligent hiring is

> predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

*Id.* "[A]n employer will not be held liable for failure to discover information about the employee's incompetence that could not have been discovered by reasonable investigation . . . ." *Id.* at 912–13. In determining whether an employer conducted a reasonable investigation, "[t]he scope of the investigation is directly related to the severity of risk third parties are subjected to by an incompetent employee." *Id.* at 913.

Hartfiel argues that "unique questions of reasonableness and fact . . . must be presented to a jury." The evidence shows that Allison had some history of aggressive behavior before Potter Trucking hired him. At age 17, Allison was arrested in Illinois for

8

assaulting his stepfather.[5] In 1997, he pleaded guilty to assaulting a woman in Nevada. Hartfiel testified that a Potter Trucking employee told him that, "about ten years ago," Allison knocked out the other employee and left him lying on the ground in a rest area. Hartfiel did not believe that Potter Trucking was informed of the incident. Hartfiel asserts that, because Potter Trucking did not perform a background check on Allison, it did not conduct a reasonable investigation when it hired Allison. Hartfiel maintains that Potter Trucking "failed to follow its own standard procedures."

An employer does not have a duty, as a matter of law, to inquire about a prospective employee's criminal record. *See Ponticas*, 331 N.W.2d at 913 ("[W]e reject the contention that, as a matter of law, there exists a duty upon an employer to make an inquiry as to a prospective employee's criminal record even where it is known that the employee is to regularly deal with members of the public."). "If the employer has made adequate inquiry or otherwise has a reasonably sufficient basis to conclude the employee is reliable and fit for the job, no affirmative duty rests on him to investigate the possibility that the applicant has a criminal record." *Id.* Whether the employer used reasonable care "in the totality of the circumstances surrounding the hiring . . . is generally a jury question." *Id.*

Here, the unchallenged evidence shows that, although Allison provided Potter Trucking a release to perform a background check, Potter Trucking checks applicants' driving records but does not conduct criminal background checks. Typically, Potter Trucking hires people on referral. Potter Trucking followed its standard procedures—it

---

[5] The record does not contain the year of the arrest.

required Allison to submit an application, interviewed him, required him to submit to drug testing, obtained a release for a background check, and relied on a referral from Allison's previous employer. Hartfiel presented no evidence to show that a genuine issue of material fact exists about whether Potter Trucking's inquiry of Allison was adequate or whether Potter Trucking had a reasonably sufficient basis to conclude that Allison was reliable and fit for the job. The record contains no evidence to suggest that Potter Trucking knew or should have known of Allison's violent propensities when it hired him. On this record, we conclude that the district court did not err by granting summary judgment to Potter Trucking on Hartfiel's claim of negligent hiring.

*Negligent retention*

"The difference between negligent hiring and negligent retention focuses on when the employer was on notice that an employee posed a threat and failed to take steps to insure the safety of third parties." *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423 (Minn. App. 1993), *review denied* (Minn. Apr. 20, 1993).

> Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background . . . . Negligent retention, on the other hand, occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment . . . .

10

*Id.* (quotation omitted). Both negligent hiring and negligent retention are based on the employer's "direct, not vicarious, liability." *Id.* at 422 (citing *Ponticas*, 331 N.W.2d at 911 n.5).

In this case, Hartfiel testified that, after Potter Trucking hired Allison, Allison "worked [a Potter Trucking subcontractor] over pretty good" at a local tavern. According to Allison's deposition testimony, the subcontractor "had said some things" that prompted Allison to tell him to "shut up," the subcontractor then "slammed his drink down" and "got right by [Allison]," and Allison thought the subcontractor was going to hit him, so Allison "smacked [the subcontractor]." Hartfiel testified that the subcontractor did not report the incident to Potter Trucking. But the owner of Potter Trucking acknowledged during his deposition that the altercation was brought to his attention in the "form of gossip." He decided not to address it because it "[was not] work related" and because "boys are boys." Allison further testified that, on a different occasion, he felt that the shop foreman made a rude comment to him on Potter Trucking premises and told the foreman that "it's no secret where I live, come on over there and I'll . . . kick your ass all over the yard." Hartfiel testified that the foreman "was quite afraid of [Allison]" and consequently was carrying a gun, but the foreman was deposed and denied being threatened by Allison or keeping a gun on Potter Trucking premises.

We conclude that genuine issues of material fact preclude summary judgment on Hartfiel's claim of negligent retention. The previously discussed evidence of Allison's violent behavior against a Potter Trucking subcontractor in a tavern and threatening behavior toward a Potter Trucking foreman is the type of evidence on which a jury could

11

find that Allison had violent propensities about which Potter Trucking knew or should have known. We therefore conclude that the district court erred by granting summary judgment to Potter Trucking on Hartfiel's claim of negligent retention.

*Westfield's intervention*

The Minnesota Rules of Civil Procedure establish two types of intervention, intervention as of right and permissive intervention. *See* Minn. R. Civ. P. 24.01 (intervention of right); Minn. R. Civ. P. 24.02 (permissive intervention). Westfield sought intervention as of right and, alternatively, permissive intervention. In allowing Westfield to intervene, the district court did not specify whether the intervention was as of right or permissive. Hartfiel argues that the district court erred by allowing Westfield to intervene.

"Orders concerning intervention as a matter of right, pursuant to Minn. R. Civ. P. 24.01, are subject to de novo review and are independently assessed on appeal." *State Fund Mut. Ins. Co. v. Mead*, 691 N.W.2d 495, 499 (Minn. App. 2005) (citing *Norman v. Refsland*, 383 N.W.2d 673, 676 (Minn. 1986)). The rule for intervention as of right provides:

> Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Minn. R. Civ. P. 24.01. "[T]he spirit behind . . . Rule 24—that of encouraging all legitimate interventions—requires a liberal application of the rule." *Engelrup v. Potter*, 302 Minn. 157, 166, 224 N.W.2d 484, 489 (1974).

To intervene as of right, a nonparty must satisfy a four-part test:

> (1) a timely application for intervention; (2) an interest relating to the property or transaction which is the subject of the action; (3) circumstances demonstrating that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and (4) a showing that the party is not adequately represented by the existing parties.

*Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 207 (Minn. 1986); *accord State Mut. Fund. Ins. Co.*, 691 N.W.2d at 499. Hartfiel appears to argue that Westfield lacked an interest relating to the subject of the action, that disposition of the action would not have impaired or impeded Westfield's ability to protect any interest it had relating to the subject of the action, and that Westfield was adequately represented by Potter Trucking.

*Westfield's interest relating to the subject of the action*

Hartfiel argues that Westfield lacked an interest relating to the subject of the action because "Westfield's only argued interest in the claim was as a party to a *future* lawsuit, should the Settlement Agreement be ruled enforceable." Minnesota appellate courts have not addressed whether an insurer's interest in its insured's liability is a sufficient interest to satisfy the requirements for intervention as of right.

Under a *Miller-Shugart* agreement, an insurer may challenge its coverage of an insured and the reasonableness of the settlement between the insured and claimant, but the insurer may not challenge the insured's liability. *See Alton M. Johnson Co.*, 463 N.W.2d at 278 n.1 ("In a *Miller-Shugart* settlement, the insured, having been denied any coverage for a claim, agrees claimant may enter judgment against him for a sum collectible only

13

from the insurance policy. To be binding on the insurer if policy coverage is found to exist, the settlement amount must be reasonable."); *Chalmers v. Kanawyer*, 544 N.W.2d 795, 796 n.1 (Minn. App. 1996) (noting that supreme court held that "in the absence of fraud or collusion, a money judgment confessed to by an insured is binding on the insurer in a garnishment action if the settlement is reasonable and prudent" (citing *Miller*, 316 N.W.2d at 734–35)).

A claimant's interest in an insurer's coverage of its insured is sufficient to permit the claimant to intervene as of right in an action concerning the insurer's coverage of the insured, provided the other requirements for intervention are met. *See Westfield Ins. Co. v. Wensmann, Inc.*, 840 N.W.2d 438, 441–43, 445–46 (Minn. App. 2013) (concluding that district court did not err by allowing claimant's intervention as of right in declaratory-judgment action by insurer against insured concerning insurance coverage), *review denied* (Minn. Feb. 26, 2014). We conclude that an insurer's interest in its insured's liability is likewise sufficient to permit the insurer to intervene as of right in an action concerning the insured's liability, provided the other requirements for intervention are met. Because Westfield had an interest in Potter Trucking's liability for Hartfiel's injuries, we further conclude that Westfield had sufficient interest relating to the subject of the action.

*Westfield's ability to protect its interest*

To intervene as a matter of right, a potential intervenor must be "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect [its] interest [relating to the subject of the action]." Minn. R. Civ. P. 24.01; *accord Schumacher*, 392 N.W.2d at 207. "Rule 24 is specifically designed to protect a nonparty

14

from having [its] interests adversely affected by litigation conducted without [its] participation." *Nash v. Wollan*, 656 N.W.2d 585, 591 (Minn. App. 2003), *review denied* (Minn. Apr. 29, 2003).

Hartfiel argues that disposition of the action would not have impaired or impeded Westfield's ability to protect its interest relating to the action because following enforcement of a *Miller-Shugart* agreement, Westfield would have been able to dispute in the declaratory-judgment or quasi-in-rem action its contractual liability for coverage and the reasonableness of the damages. Indeed, after an insured and a claimant execute an enforceable *Miller-Shugart* agreement, the insurer is limited to disputing whether its policy covers the damage and whether the settlement amount was reasonable. *See Alton M. Johnson Co.,* 463 N.W.2d at 278 n.1 ("To be binding on the insurer if policy coverage is found to exist, the settlement amount [of a *Miller-Shugart* agreement] must be reasonable."); *Chalmers*, 544 N.W.2d at 796 n.1 (noting that supreme court held that "in the absence of fraud or collusion, a money judgment confessed to by an insured is binding on the insurer in a garnishment action if the settlement is reasonable and prudent" (citing *Miller*, 316 N.W.2d at 734–35)). Following enforcement of a *Miller-Shugart* agreement between Hartfiel and Potter Trucking, Westfield would have been unable to challenge Potter Trucking's liability for Hartfiel's injuries; Westfield would have been restricted to challenging its policy coverage and whether the settlement amount was reasonable. We conclude that Westfield's ability to protect its interest could have been impaired or impeded by disposition of the action. *See* Minn. R. Civ. P. 24.01.

*Adequacy of Westfield's representation*

If a potential intervenor satisfies all other intervention requirements, it may intervene as of right "unless [its] interest is adequately represented by existing parties." Minn. R. Civ. P. 24.01; *accord Schumacher*, 392 N.W.2d at 207. Hartfiel argues that any interest of Westfield's was adequately represented by Potter Trucking because Potter Trucking "argued against liability in its answer and throughout the course of the matter." Hartfiel also argues that the district court "wholly ignored the *Miller-Shugart* process when permitting Westfield to intervene." Regarding the latter argument, we already have decided that the district court did not err by concluding that Hartfiel and Potter Trucking did not enter into an enforceable *Miller-Shugart* agreement and will not repeat that analysis.

As to the issue of adequate representation, at the hearing on Hartfiel's motion to enforce the *Miller-Shugart* agreement, Potter Trucking did not argue that the agreement was unenforceable. Potter Trucking's counsel did not present Westfield's legal position or arguments because that counsel did not represent Westfield. If Westfield had not been allowed to intervene, no party to the underlying action would have opposed Hartfiel's motion to enforce the agreement.

We conclude that Westfield's interest was not adequately represented in the underlying action and that Westfield was entitled to intervene as of right. Even if Westfield was not entitled to intervene as of right, it was entitled to intervene permissively. The rule for permissive intervention provides that "[u]pon timely application anyone may be permitted to intervene in an action when an applicant's claim or defense and the main action have a common question of law or fact." Minn. R. Civ. P. 24.02. Permissive

16

intervention "is left to the discretion of the trial court and will be reversed only when there has been a clear abuse of its discretion." *Norman v. Refsland*, 383 N.W.2d 673, 676 (Minn. 1986). Hartfiel sought to enforce the *Miller-Shugart* agreement against Potter Trucking, and Westfield sought to intervene to challenge the enforceability of the *Miller-Shugart* agreement. Westfield's defense therefore had questions of law and fact common to the underlying action, and Westfield's alternative permissive intervention was not an abuse of discretion.

In sum, the district court did not err by concluding that the *Miller-Shugart* agreement was unenforceable; it did not err by granting summary judgment to Potter Trucking on Hartfiel's claim of negligent hiring; it erred by granting summary judgment to Potter Trucking on Hartfiel's claim of negligent retention; and it did not err by allowing Westfield to intervene in the underlying action.

**Affirmed in part, reversed in part, and remanded.**