INGVALD V. JALLEN v. OLE N. AGRE AND ANOTHER.

119 N. W. (2d) 739.

January 4, 1963—No. 38,345.

*Olson, Kief & Severson,* for appellant.

*Cummins, Cummins & Gislason* and *David W. Nord,* for respondent Agre.

*Rosengren, Rufer, Blatti & Hefte,* for respondent Ingalls.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying plaintiff's alternative motion for judgment notwithstanding the verdict or for a new trial.

The case arises out of injuries sustained by plaintiff while riding as a passenger in a 1953 GMC pickup truck driven by defendant Ole N. Agre with the consent of the owner, defendant Betty R. Ingals. At the time of the accident, plaintiff and Agre were both employed by H. Reese & Sons Construction Company, which was then engaged in road construction on State Trunk Highway No. 1 near Red Lake, Minnesota. The accident occurred about 6 a. m. on August 18, 1955, while Agre was driving the pickup in an easterly direction on State Trunk Highway No. 1, which at that time had an ungraded sandy surface. It contained slight dips and rises as it followed the contour of the land. As they came over a slight rise, they were confronted by a pack of dogs in a dip some distance ahead. According to Agre's testimony, the dogs were hidden from his view until he was about 100 feet away from them. They were then observed to be in his lane of

traffic. In an attempt to avoid hitting the dogs, he turned to the left side of the road, but one of the dogs ran into the right front wheel and became lodged between the wheel and the fender, causing him to lose control of his truck, which swerved to the right, hit a sandbank, flipped over on its side and then onto its top. He estimated that he was traveling about 45 miles per hour when he first saw the dogs and that he had reduced his speed to 30 or 35 miles per hour when he collided with the one dog.

Plaintiff commenced this action to recover for his injuries. The action was originally called for trial on October 14, 1959, before the Honorable Arnold C. Forbes at Bemidji. At about 9:30 in the morning, counsel for the parties were permitted to meet in the chambers of the judge to confer on the case and to attempt to negotiate a settlement. It had developed that there was a possibility that Agre was covered by two insurance policies covering the operations of H. Reese & Sons Construction Company, the existence of which policies had theretofore been unknown to defendants' counsel. Counsel for the defendants actually represented their insurers, both of which had denied liability. A motion was made for continuance of the trial in order to enable counsel to tender the defense of the action to the insurers of H. Reese & Sons Construction Company. At the same time, plaintiff moved the court for permission to increase his prayer for relief. Both motions were granted. No record was made of the conference or settlement negotiations, although it does appear from the record that the attorneys met from 9:30 in the morning until late in the afternoon.

On February 5, 1960, Judge Forbes issued an order to show cause why judgment should not be entered against defendants for the sum of $15,000 on the ground that the case had been settled for that amount. Hearing on this order was set for March 21, 1960.

On February 16, 1960, the Honorable Paul A. Lundgren was presiding at the term of court then commencing in Beltrami County. At the call of the calendar, plaintiff moved for entry of judgment in his favor in the sum of $15,000, based on the alleged settlement consummated on October 14, 1959. It was his contention that the parties

had entered into an enforceable settlement in that amount, subject only to the tender of the defense to the insurers for H. Reese & Sons Construction Company; that such tender had now been made and declined by these insurers; and that the conditions of the settlement were therefore removed and the settlement absolute. Defendants resisted this motion and denied that a settlement had been consummated. In view of the fact that consummation of the settlement was in dispute and there was no record upon which the presiding judge could act, Judge Lundgren refused to act upon plaintiff's motion and directed that the case stand for trial, subject to the further order of Judge Forbes.

On March 21, 1960, the order to show cause came on for hearing before Judge Forbes. Counsel for defendant Agre and counsel for plaintiff were present. Counsel for defendant Ingalls was not present. A record was made of this hearing. Affiliated counsel for defendant Agre first stated his recollection of the conference. He stated that the settlement of $15,000 was agreed upon, but that such agreement was not to affect defendants as uninsured individuals or the insurance companies not represented, and that first a declaratory judgment action was to be commenced to settle the issues of policy coverage. After a heated discussion between Judge Forbes and counsel, in which a violent disagreement appeared as to the recollection of the parties and the court, nothing seems to have been decided.

On April 21, 1960, Judge Forbes, without deciding the order to show cause, set the case for trial on May 2, 1960, before Judge Lundgren and a jury. Before the trial commenced, counsel were called into the court chambers and a conference was had, at which time plaintiff renewed his motion for entry of judgment pursuant to the settlement agreement. Judge Lundgren, in a memorandum attached to his order denying plaintiff's motion for judgment notwithstanding or a new trial, said:

"The Court, deeming that said Order of April 21, 1960, was a denial of the plaintiff's motion, the parties being present, a jury being in attendance, and a vacancy existing in the trial calendar by virtue of the

settlement of the scheduled cause, this Court elected to treat the Order as a directive to proceed with the trial. *This was assented to by counsel for all parties.*" (Italics supplied.)

Thereafter, a trial was had, resulting in a verdict adverse to plaintiff. A motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was denied, and this appeal followed. In that motion plaintiff again renewed his contention that a settlement had been reached on October 14, 1959, and that judgment should be entered in his favor in the amount of such settlement.

1. The difficulty with plaintiff's position is not in finding law to support his contentions but in finding facts to support his position. There can be no doubt that a definite settlement of a lawsuit, under our decisions, will be enforced, absent fraud or collusion, mistake, or such an improvident agreement that it ought not to stand in equity and good conscience.[1] The law favors settlement of litigation.

2. A compromise settlement of a lawsuit is contractual in nature.[2] To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said that there has been a meeting of the minds on the essential terms of the agreement.[3]

3. It is not essential to the enforcement of an agreement to settle a case that the agreement be in writing unless it is within the statute of frauds,[4] but the terms of the settlement should normally be stated to the court and taken down by the reporter or otherwise reduced to writing so as to prevent a dispute as to what the terms of the settlement are. We have recently upheld the settlement of lawsuits in two cases where the terms of the settlement were definite. Rogalla v. Rubbelke, 261 Minn. 381, 112 N. W. (2d) 581; Schoenfeld v. Buker, 262 Minn. 122, 114 N. W. (2d) 560.

4. Where there is a dispute as to whether a settlement was reached, it is ordinarily for the trial court to determine what the facts are.[5]

---

[1]Keller v. Wolf, 239 Minn. 397, 58 N. W. (2d) 891.

[2]See, 11 Am. Jur., Compromise and Settlement, § 3.

[3]Held v. Keller, 135 Minn. 192, 160 N. W. 487; 15 C. J. S., Compromise and Settlement, § 7.

[4]State ex rel. Bassin v. District Court, 194 Minn. 32, 259 N. W. 542.

[5]State ex rel. Bassin v. District Court, 194 Minn. 32, 259 N. W. 542.

5. Plaintiff's difficulty here is that the trial court has not determined that there was a valid settlement. To the contrary, it is implicit in his order assigning the case for trial that he found otherwise, or at least felt that the record was so unsatisfactory that he could not find that there had been a completed settlement. The judge before whom the case was tried so construed the order as shown by his memorandum now before us. His memorandum states that counsel for all parties assented to the trial.

Plaintiff is also faced with still another obstacle—a settlement may be abandoned. Any conduct inconsistent with an intention to rely on a compromise agreement will ordinarily be held to be an abandonment.[6] Plaintiff could have insisted upon a determination by the court of its order to show cause. Having voluntarily proceeded with the trial, plaintiff cannot revert to the alleged settlement after an adverse verdict. As a matter of fact, the order of the court assigning the case for trial was tantamount to a refusal to find a valid settlement had been effected. It is difficult to see how the trial court could have done otherwise on the record before us. No record was made of any oral negotiations had between the parties. They are in violent disagreement as to what did take place. This case illustrates the importance of making a record of settlement negotiations and of any agreement reached, not only to avoid a dispute between the parties and their attorneys as to what transpired, but also to prevent dragging the trial court into a bitter conflict as to what took place. We are of the opinion that under the record in this case no enforceable settlement has been established.

6. Plaintiff next contends that the evidence does not sustain the verdict. To support this claim he relies largely on an exhibit showing the elevation of the highway at 100-foot intervals, which he contends conclusively refutes the testimony offered by defendants with respect to Agre's inability to see the dogs in time to stop. On the record before us the contour of the highway and the visibility of the dogs clearly presented a fact issue for the jury. We see no object in elaborating on this issue.

Plaintiff next contends that he is entitled to a new trial because the

---

[6] 15 C. J. S., Compromise and Settlement, § 29.

court erred in excluding some of the testimony of his expert witness, a registered professional highway engineer and also a registered land surveyor. This witness was employed by the State Highway Department and was the project engineer for the grading job on State Trunk Highway No. 1 at the time of the accident. Plaintiff introduced an exhibit showing the contour of Highway No. 1 and showing the elevation of the highway at 100-foot intervals. The witness then was asked to read some of the elevations between a point near where the accident occurred and one 1,200 feet to the west. It was found that a difference in elevation of 4½ feet existed between these points. Counsel for plaintiff then asked the following question:

"Q. Can you tell us from Plaintiff's Exhibit 1, there what the sight distance is along that highway as it existed on August 18th, 1955?"

Objection to this question was sustained on the ground that it lacked foundation. Counsel for plaintiff then asked the witness:

"Q. Well, does the exhibit show the sight distance?"

Objection was again sustained for lack of foundation. The question as asked clearly lacked foundation. Sight distance is meaningless unless the circumstances are explained showing at what height the sight is taken, from and to what point. The question as asked not only lacked foundation, but it is difficult to see how it could be answered at all.

The only other serious contention of plaintiff is that the court erred in its instruction to the jury when it read Minn. St. 169.14, subd. 3. The court first informed the jury, pursuant to § 169.14, subd. 2:

"You are instructed that where no special hazards exist the lawful speed in the State of Minnesota, outside of a municipality, is sixty miles per hour during the daytime, subject to the following restrictions which I shall now read to you."

He then read § 169.14, subd. 1, which provides:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with

any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

He then read the following portion of § 169.14, subd. 3:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed * * * when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

Plaintiff insists that the court should have also stated that subd. 3 requires a driver to drive at an appropriate reduced speed "when approaching a hill crest." The court, in its memorandum, admits that it inadvertently neglected to include that phrase. The omission was called to the court's attention before the jury retired, but the court was of the opinion that it was not sufficiently material to warrant going back at that point and reinstructing the jury.

We fail to see how the omission could possibly be prejudicial. In the first place, the accident did not happen as defendant was approaching a hill crest. The hill crest, if there was any, could not have had anything to do with obstructing visibility of the driver as he proceeded down the hill, but we doubt that the contour of this highway contains such hill crests as are contemplated by the statute, requiring a driver to reduce his speed as he approaches each slight rise in the highway. In any event, the court did instruct the jury that the "driver * * * shall * * * drive at an appropriate reduced speed when special hazards exist with respect to * * * highway conditions." The instructions must be read as a whole, and the jury could hardly have been misled by this omission.

It seems that plaintiff's contentions on his motion for judgment notwithstanding the verdict and his contentions on his motion for a new trial are quite inconsistent. In support of his contention that he is entitled to judgment notwithstanding the verdict, he takes the position that it appears as a matter of law that no serious obstacles to the view of the driver existed. In his reply brief he said:

"* * * Mr. Agre had in excess of one thousand feet of unobstructed

vision as he approached the scene of the accident. True, there are hills and rises on the road, but the physical evidence as shown by the plats prove conclusively that none of these would obstruct the vision of a person operating a pickup truck. * * *

"* * * It is submitted that the conclusively proved physical facts show that the dogs would be plainly visible for a distance in excess of one thousand feet from the point of the accident and that there was no rise or dip of sufficient magnitude to obstruct the driver of a pickup truck from seeing dogs on the road."

In support of his claim that he is entitled to a new trial, plaintiff complains of the failure of the court to instruct the jury that the driver of the truck was required to reduce his speed in approaching a hill crest. If the road contained no rise or dip that would obstruct the view of the driver, it is difficult to see how it had a hill crest requiring a reduced speed. A hill crest, as contemplated by the statute, means something more than the slight dips and rises that exist in a country road. Reduction in speed is required because of the inability of a driver to see what is approaching on the other side of the hill crest. It is doubtful that any hill crest, as contemplated by the statute, existed here. There may, however, have been such slight rises and dips in the road as to impair the ability of a driver to see dogs on the highway. It was for the jury to determine the facts in that regard.

The other complaints of plaintiff relate principally to the objections of opposing counsel to his argument with respect to the amount of the verdict. Inasmuch as the jury found for defendants, they never reached the question of the amount of the verdict, so it is difficult to see how any prejudice could have resulted.

We find no reversible error.

Affirmed.