## BERTHA THEIS, BY J. RUSSELL CARROLL, v. WILLIAM A. THEIS.

135 N. W. (2d) 740.

May 14, 1965—Nos. 39,562, 39,563.

*Carroll & Perbix,* for appellant.
*Sigal, Savelkoul, Cohen & Sween,* for respondent.

NELSON, JUSTICE.

Two appeals are here presented to the court. The first appeal, No. 39562, by J. Russell Carroll as guardian of Bertha Theis, is from an order of the District Court of Hennepin County dated June 12, 1964, denying his motion for entry of judgment based upon a stipulation. The second, No. 39563, by Mr. Carroll as administrator of the estate of Mrs. Theis, is from a judgment of the same district court entered May 22, 1964,[1] determining a will executed by Mrs. Theis on June 20, 1950, to be her "duly executed and existing Last Will and Testament," and remanding the case to the probate court for pro-

---

[1] The notice of appeal stated that the judgment was entered April 21, 1964. No particular point of that error need be made, for we have held that a mistake in a notice of appeal in the date of an order appealed from is immaterial when the notice is otherwise adequate. Anderson v. County of Meeker, 46 Minn. 237, 48 N. W. 1022.

ceedings consistent with the judgment. The latter appeal is also taken from an order denying appellant's motion for amended findings or a new trial.

Appellant does not include a statement of the facts in his brief, but the record indicates that the essential facts are as follows: On June 20, 1950, Mrs. Theis executed a will appointing respondent, William A. Theis, as executor and devising and bequeathing all her property to her three sons—respondent, Joseph Theis, and George Theis. She specifically omitted her two daughters, Mrs. Dorothy Jackels and Mrs. Marie Westling, stating that she had loaned money to them which had not been repaid. We will hereafter refer to this will as the 1950 will.

In July 1956 Mrs. Theis, being then the owner of 300 shares of stock in Northern States Power Company, transferred them to respondent, after which they were registered in his name. It appears, however, that some of the stock was later endorsed by respondent and sold, the proceeds being used for the care of Mrs. Theis during her lifetime. The remaining stock remained registered in respondent's name.

In June 1958 Mrs. Jackels, one of the daughters who had been omitted in the 1950 will, called appellant, who is an attorney, for the purpose of bringing Mrs. Theis to see him. He advised Mrs. Theis at that time that because of her age, and only because of her age and infirmity, she should have a guardian appointed so that a suit could be brought against respondent for the recovery of the stock still registered in his name. In August of that year appellant, having been appointed by the probate court of Hennepin County as guardian of the person and estate of Mrs. Theis, brought suit against respondent for the purpose of setting aside the transfer of the stock on the ground that such transfer had been fraudulently induced by him. Respondent in his answer denied fraud or lack of consideration. He also cross-claimed, asking that appellant, who had obtained physical possession of the stock, be required to return it to him. When the suit came on for trial April 30, 1959, a discussion between the parties took place in the court's chambers, as a result of which they placed in the record an oral stipulation providing that sufficient shares of the stock regis-

tered in the name of respondent should be sold if and when necessary for the care and maintenance of Mrs. Theis and that upon her death the remaining stock and any unused proceeds from the sale of any part thereof were to be "divided and distributed equally among the four children[2] of Bertha Theis * * * or their heirs." The stipulation also stated that a guardian or trustee was "to be agreed upon."

After the stipulation had been read into the record the following conversation took place:

"The Court: And upon the completion of a formal agreement, the parties hereto will enter into a written stipulation dismissing the action with prejudice and without costs. Mr. Carroll, is that satisfactory?

"Mr. Carroll: Yes.

"The Court: Mr. Vesely, is that satisfactory?

"Mr. Vesely [attorney for respondent]: Yes.

"The Court: So far as we are concerned, this case is settled and stricken for settlement?

"Mr. Carroll: Yes, it is stricken for settlement.

"Mr. Vesely: Yes.

"The Court: Upon the stipulation which has been read into the Record, it is hereby ordered that this case be and is hereby stricken for settlement."

The foregoing conversation indicates that, at the time the court ordered the case stricken for settlement based upon the stipulation read into the record, all interested parties either present in person or represented by counsel had fully agreed and assented thereto.

■ Mrs. Theis died March 8, 1963. Thereafter one of the heirs petitioned the probate court for appointment of appellant as administrator of her estate. Respondent filed objections thereto and a petition to prove the 1950 will. On July 24, 1963, after a hearing on the petitions, the probate court denied the 1950 will admission to probate and appointed appellant administrator. Respondent appealed to the district court from that order and after trial the district court held the will entitled to probate, leading to appeal No. 39563. We defer discussion of this appeal for the present.

---

[2]Apparently Joseph Theis had died prior to this time.

Turning to appeal No. 39562, the order from which this appeal was taken was entered June 12, 1964, and denied appellant's motion for substitution of himself as administrator of the estate of Mrs. Theis in the action for the recovery of the stock and for entry of judgment pursuant to the stipulation read into the record on April 30, 1959.

The district court had denied a motion for substantially the same relief on March 25, 1964, and respondent served notice of the filing of this order on appellant March 27. He contends that because the order dated March 25, 1964, was not vacated nor appealed within the time specified in Minn. St. 605.08 and because the motion denied by the order dated June 12, 1964, asked for substantially the same relief that was denied by the previous order, the order of June 12 was not appealable. See, Barrett v. Smith, 183 Minn. 431, 237 N. W. 15; Tryggeseth v. Norcross, 262 Minn. 440, 115 N. W. (2d) 56.

We need not consider the appealability of the order of June 12, 1964, because we hold that appellant is not the real party in interest and therefore does not have standing to seek relief.

The trial court, in a memorandum accompanying the order issued on March 25 explained that the motion then made for substitution had to be denied for reasons inherent in the decision in the appeal from the order denying probate to the 1950 will. It is clear that after Mrs. Theis' death appellant was no longer the real party in interest. The trial court stated:

"The stipulation for a settlement does not require or even contemplate that the stock would become part of the estate. It appears that a trustee was contemplated and that the trustee was to divide the stock upon the death of Bertha Theis."

And further:

"The stipulation before Judge Jaroscak on April 30, 1959, provided that it should be supplemented by a formal written agreement before the case would be dismissed. This was not done. The case was stricken for settlement but the settlement was not consummated before the death of Bertha Theis."

Appellant obviously is not acting as a trustee. His right to sue in the

capacity of guardian was extinguished by the ward's death, since Minn. St. 525.60 provides that a guardianship ceases upon the death of the ward. In State v. Tri-State Tel. Co. 146 Minn. 247, 178 N. W. 603, this court held that the term "parties" includes those who are directly interested in the subject matter and who have a right to control the proceedings, examine and cross-examine the witnesses, and appeal from the order or judgment finally entered. See, also, Rule 17.01, Rules of Civil Procedure, which provides that every action shall be prosecuted in the name of the real party in interest. It would therefore appear that a separate proceeding by the real parties in interest would be necessary to determine the effect of the foregoing stipulation of settlement.

■ Respondent contends that the stipulation should not be given effect for the reason that it was not supplemented by a formal written agreement as contemplated by its terms and on the further ground that the stipulation involved an attempted testamentary disposition of the remaining stock not executed by the testator and subscribed by witnesses as required by § 525.18.

While those issues must be determined in other proceedings appropriate for that purpose, we might point out that the law relative to compromise and settlement is illustrated by the following statement in 15 Am. Jur. (2d) Compromise and Settlement, § 21:

"* * * [A] valid compromise and settlement is final, conclusive, and binding upon the parties; it is as binding as any contract the parties could make, and as binding as if its terms were embodied in a judgment; and, regardless of what the actual merits of the antecedent claim may have been, they will not afterward be inquired into and examined."

■ In Jallen v. Agre, 264 Minn. 369, 373, 119 N. W. (2d) 739, 743, we said:

"A compromise settlement of a lawsuit is contractual in nature. To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said that there has been a meeting of the minds on the essential terms of the agreement.

"It is not essential to the enforcement of an agreement to settle a case that the agreement be in writing unless it is within the statute of frauds, *but the terms of the settlement should normally be stated to the court and taken down by the reporter or otherwise reduced to writing so as to prevent a dispute as to what the terms of the settlement are.* We have recently upheld the settlement of lawsuits in two cases where the terms of the settlement were definite. [Citations omitted.]" (Italics supplied.)

See, Eggleston v. Keller Drug Co. 265 Minn. 78, 120 N. W. (2d) 305; Rogalla v. Rubbelke, 261 Minn. 381, 112 N. W. (2d) 581; Schoenfeld v. Buker, 262 Minn. 122, 114 N. W. (2d) 560; Favorite v. Minneapolis St. Ry. Co. 253 Minn. 136, 91 N. W. (2d) 459.

The stipulation of April 30, 1959, made in open court by counsel for both sides, plainly provided that the shares of stock unsold on Mrs. Theis' death should be divided equally among the parties to the stipulation and their heirs. Respondent abided by the stipulation during his mother's lifetime. To now say that the stipulation of April 1959 is ineffectual would confer benefits upon him to which, by assenting to the stipulation, he admitted he was not entitled in 1959. The courts long ago adopted the constructive trust doctrine to avoid such unjust enrichment. See, Knox v. Knox, 222 Minn. 477, 25 N. W. (2d) 225; Brennan v. Carroll, 260 Minn. 521, 111 N. W. (2d) 229; Marquette Appliances, Inc. v. Economy Food Plan, Inc. 256 Minn. 169, 97 N. W. (2d) 652; Gethsemane Lutheran Church v. Zacho, 253 Minn. 469, 92 N. W. (2d) 905.

■ The facts relative to the 1950 will and the alleged revocation thereof can be briefly stated. It is agreed that the will was executed in conformity with the requirements of Minn. St. 525.18, subd. 1, which prescribes the following formalities as necessary:

"Every person of sound mind, not a minor, may dispose of his estate, or any part thereof, or any right or interest therein, by his last will in writing, signed by him or by some person in his presence and by his express direction, and attested and subscribed in his presence by two or more competent witnesses."

The question involved in appeal No. 39563 centers around the issue of whether that will was subsequently revoked. Appellant introduced into evidence three documents dated 1953, 1955, and 1956, allegedly carbon copies of wills executed by Mrs. Theis. These all contain clauses revoking all previous wills. Apparently they were prepared by appellant and the copies were retained by him in his law office. None, however, was signed or witnessed. Appellant testified that the instruments—presumably the originals—had been executed by Mrs. Theis, but he did not state that they had been subscribed by witnesses nor does the record indicate that they were. Minn. St. 525.19 provides that an instrument revoking a will must be executed with the same formalities as those with which the will itself is required to be executed. Here there is no proof that the purported wills, copies of which were introduced in evidence, had been so executed. Clearly, they cannot be given effect as revocatory instruments.

■ Appellant testified that under the instructions of Mrs. Theis he tore up the last will Mrs. Theis had knowledge of. But he also indicated he did not tear up any of those wills of which carbon copies were introduced into evidence and indicated further that he did not know which will he had in fact destroyed. The trial court regarding this point said:

"There is no evidence as to the contents or execution of the will destroyed in 1958, and it is noted in passing that Mr. Carroll's uncorroborated testimony does not meet the requirements of Sec. 525.19 where a will is claimed to have been destroyed by one other than the maker."

Section 525.19 requires that if the will is destroyed by one other than the testator at the testator's direction, the destruction thereof shall be proved by at least two witnesses. Such proof was neither attempted nor made. Clearly, the record as it stands is without sufficient proof to establish that the will of June 20, 1950, was revoked.

Appellant raises some question about the solvency of the estate. That issue is relevant to this case only to the extent that if in fact the estate is solvent and there are other assets aside from the shares of stock such assets will pass under the 1950 will.

The order of May 20, 1964, denying appellant's motion for amended findings or a new trial and the judgment entered May 22, 1964, are in all things affirmed.

Appeal No. 39562 is dismissed.

Appeal No. 39563 is affirmed.