Paul HILLMEYER, Appellant,

v.

Nicholas WATZ, Respondent.

No. C6-87-1239.

Court of Appeals of Minnesota.

Nov. 17, 1987.

Review Denied Jan. 28, 1988.

Brian M. Olsen, Radzwill, Olsen & Cox, Cokato, for appellant.

Jeffrey R. Ansel, Winthrop & Weinstine, St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

PARKER, Judge.

This case arises from Paul Hillmeyer's allegation that he mistakenly settled a disputed claim with Nicholas Watz by paying

$11,827.50 to satisfy an uncovered, $20,000 check issued to satisfy a debt that existed between Watz and Patrick Delare. Hillmeyer alleged the check was a forgery, but settled the claim nonetheless. Watz moved for summary judgment and asserted the affirmative defense of accord and satisfaction. The trial court granted the motion, holding there was no genuine issue of material fact in dispute. We reverse.

## FACTS

Paul Hillmeyer, a farmer in Cokato, Minnesota, is brother-in-law to Patrick Delare, presently a prisoner in Stillwater State Prison. According to Hillmeyer's deposition, over the course of the last eight to ten years he has paid between $150,000 and $200,000 in bad debts incurred by Delare. He paid these debts of his own volition with no promise of repayment because

at that time I had a lot of assets, * * * I thought it was the only way I'd have anything left, if it went through courts and lawyers * * * I'd lose everything * * *. And it was a lot of my neighbors and local banks that were involved, and I thought I plan to stay here the rest of my life * * *. I thought it was good business on my part. That's basically the reason I didn't ask any questions. I went to bed one night and I woke up with the way of doing it, and I did it all on my own and I hired no lawyers or anything.

On January 27, 1986, Hillmeyer first learned of a check bearing his name which had been dishonored. The check was dated October 27, 1985, and had been given to Watz by Delare in satisfaction of a loan. It was drawn on an account Hillmeyer had opened under the name, "Steam Brothers." Watz's attorney sent Hillmeyer a certified letter asking for payment of the check saying:

Unless the $20,000, plus interest, costs and charges, is paid in full within five (5) business days after the mailing of this notice of nonpayment and dishonor, the undersigned will consider pursuing legal remedies available to him, including referring this matter to proper authorities.

It is undisputed that Hillmeyer had no business dealings with Watz and told Watz's attorney from the onset that the check was a forgery. Hillmeyer claims that upon receipt of the letter he felt he was under a legal obligation to pay the amount to Watz or face criminal prosecution for theft. He discovered a packet of his checks missing, suspected Delare of the forgery and confronted him. He also suspected that Delare had intercepted his checking account notices, because he had never received notice from the bank that this check had been dishonored.

Hillmeyer testified that when he confronted Delare, Delare admitted he owed Watz money, but made no admission regarding the forgery and promised to make good the debt.

Hillmeyer testified to this sequence of events:

And that's the last I seen Pat. He did call me * * * he had called [Watz's attorney] * * * with how he would pay them off, or if he used my name in the process or what, I don't know, and he said he would take care of it.

So probably about three or four days before payment to [Watz's attorney] was supposed to be made or to Mr. Watz, my sister came down and said Pat ran away and this guy was threatening the kids and her for some money * * * and he was making phone calls and he was coming over and he was threatening them. And she and the kids came down to see me, and Pat had left then, and she didn't know where he was at the time, And I don't know, I didn't go * * * see a lawyer or anything, I just made arrangements to take care of the payments thinking that they were going to send the authorities after me or the deputy or whatever they had said in their letters.

Watz's attorney sent a second letter, on February 3, 1986, after Hillmeyer had told him that he did not sign the check. It said:

It is my further understanding that check number 125 was *made out by you* on behalf of or as representative of Steam Brothers. If payment is not delivered to my office by February 10, 1986,

Annandale State Bank will be authorized to release information relating to your account to the holder of the check and to proper authorities. Moreover, my client will pursue all available remedies to him. (Emphasis supplied).

Hillmeyer paid $11,827.50 to Watz's attorney in settlement for the $20,000 dishonored check. He signed an "accord and satisfaction" without the advice of counsel, alleging at all times that the check was a forgery.

About one week later, when the $20,000 check was not returned to him as agreed, Hillmeyer sought legal advice. At that point, Hillmeyer requested a return of the funds paid by mistake. When Watz refused, this case for restitution was initiated.

The trial court did not establish whether the signature was a forgery and deemed it to be of no legal significance. Hillmeyer appeals from that judgment.

## ISSUES

1. Do genuine issues of material fact exist which preclude summary judgment?

2. Was the accord and satisfaction a valid compromise and settlement?

## DISCUSSION

### I

▮ Minn.R.Civ.P. 56.03 states that the court shall render summary judgment when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Hillmeyer contends there are genuine issues of material fact unsettled in this case.

It is undisputed that a check with the name of Hillmeyer as drawer was issued to Watz in payment of the Delare loan. After the check was dishonored for insufficient funds, on January 27, 1986, Watz's letter to Hillmeyer demanded payment of the check in five business days, before releasing information to the proper authorities.

Hillmeyer contacted Watz's attorney and indicated that it was not his signature on the check. The attorney's November 10, 1986, affidavit corroborates this: "Mr. Hillmeyer stated that while he did not sign the check, he wanted to settle the indebtedness * * *."

However, in a letter sent February 3, 1986, Watz's attorney made this misstatement: "It is my further understanding that check number 125 was made out by you * * *." He again threatened to release information to proper authorities if payment were not made.

This letter was sent *after* Hillmeyer had informed the attorney that he did not sign the check, and still the attorney persisted in his attempt to collect the debt from him. The attorney misstated his understanding of Hillmeyer's position and threatened him with criminal prosecution. We find that the language used in the second letter, coupled with the misstatement, comes uncomfortably close to violating Minn.Stat. § 609.27 subd. 1(5) (1986).[1]

The attorney was a trained professional dealing with an unrepresented person; this created a significant disparity between parties. An attorney knows that a forged drawer's signature on a check is not properly chargeable to the drawer's account. Watz's attorney knew that Hillmeyer denied having drawn the check, yet the attorney's letter threatened Hillmeyer with criminal charges. He sent the letter to an unrepresented individual with grossly unequal knowledge of the law and a history

---

1. Whoever orally or in writing makes any of the following threats and thereby causes another against the other's will to do any act or forebear doing a lawful act is guilty of coercion and may be sentenced as provided in subdivision 2:

    \*    \*    \*    \*    \*    \*

(5) A threat to make or cause to be made a criminal charge, whether true or false; provided that, a warning of the consequences of a future violation of law given in good faith by a peace officer or prosecuting attorney to any person shall not be deemed a threat for the purposes of this section.

Minn.Stat. § 609.27, subd. 1(5) (1986).

of settling debts for his brother-in-law. The attorney was aware of that history. We hold that whether or not the check is a forgery is a material fact precluding summary judgment.

## II

Watz argues that he was entitled to summary judgment because the payment is satisfaction, compromise and settlement of the $20,000 dishonored check. A compromise and settlement is contractual in nature and requires an offer and acceptance constituting a meeting of the minds. *See Theis v. Theis*, 271 Minn. 199, 204, 135 N.W.2d 740, 744 (1965). The consideration is the settlement of the dispute. *See Conners v. United Metal Products Co.*, 209 Minn. 300, 301, 296 N.W. 21, 22 (1941).

Watz argues that Hillmeyer received a full discharge of over $8,000 of alleged indebtedness and in return Watz agreed to a reduced amount in full settlement of a $20,000 claim. However, Hillmeyer thought he was bargaining to be free of criminal prosecution. The letters show that the attorney created an artificial dispute and offered the "consideration" of not reporting "to proper authorities." An agreement to compromise a baseless claim lacks consideration. *Sisco v. Paulson*, 232 Minn. 250, 254, 45 N.W.2d 385, 388 (1950). The attorney's overreaching caused Hillmeyer to sign the accord and satisfaction.

To sustain a compromise and settlement, it must appear that the claim or controversy settled, though perhaps not in fact valid in law, was presented and demanded in good faith and upon reasonable grounds for inducing the belief that it was enforceable. *State v. Bies*, 258 Minn. 139, 146, 103 N.W.2d 228, 234 (1960). We find that the induced accord and satisfaction lacks the good faith and reasonable grounds needed to produce a valid compromise and settlement.

## DECISION

Whether the check was forged is a genuine issue of material fact which precludes summary judgment. The accord and satisfaction lacks consideration, was not induced in good faith and is therefore invalid.

Reversed.