**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0209**

In re the Marriage of:
Thomas Erle Tornstrom, petitioner,
Respondent,

vs.

Jennifer Lynn Tornstrom,
n/k/a Jennifer Lynn Klemenhagen,
Appellant.

**Filed November 21, 2016**
**Affirmed**
**Kirk, Judge**

Houston County District Court
File No. 28-FA-14-911

Joan K. Parke, Laura J. Seaton, Bosshard Parke, Ltd., La Crosse, Wisconsin (for respondent)

Amber Lawrence, Dittrich & Lawrence, P.A., Rochester, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

**S Y L L A B U S**

1.      A husband and wife consent to a mediated settlement agreement under Minn. Stat. § 518.619, subd. 7 (2014), and agree that it will be submitted to and enforced by the district court before it is reduced to a signed marital-termination agreement (MTA) by orally recording the terms of the settlement and acknowledging their intent to form a binding agreement.

2.      The terms of a mediated settlement agreement may be incorporated into a dissolution judgment and decree and enforced by the district court where the parties had a meeting of the minds on its essential terms and the agreement was supported by consideration.

**O P I N I O N**

**KIRK**, Judge

Appealing the marital-dissolution judgment, appellant-wife challenges the terms of a mediated settlement agreement incorporated into the judgment and decree and enforced by the district court. Wife argues that the judgment is invalid because: (1) the mediated settlement agreement was not reduced to an MTA that was signed by both parties before it was presented to the district court, and (2) the settlement is not an enforceable agreement. Because the parties orally recorded their agreement to the terms of the settlement, acknowledged their intent to form a binding agreement, and the settlement is supported by consideration, we affirm.

**FACTS**

In October 2014, respondent-husband Thomas Erle Tornstrom petitioned for dissolution of his marriage to appellant-wife Jennifer Lynn Tornstrom. At the time the petition was filed, the parties had two minor children.

In February 2015, the district court filed temporary orders granting the parties joint legal and joint physical custody and ordering husband to pay wife temporary spousal maintenance and child support. It also ordered the parties to undergo a custody evaluation. Five months later, the custody evaluator submitted his evaluation to the district court. The

2

custody evaluation recommended that husband be awarded sole legal custody and sole physical custody of the children, subject to wife's reasonable parenting time.

On September 25, 2015, the parties, along with counsel, met with a mediator. After eight hours, the parties reached a global settlement. The parties orally confirmed the terms of their agreement, which the mediator tape recorded. The parties agreed that husband would have sole legal and sole physical custody of the children, and wife would have parenting time two weeknights after school and every other weekend. During the summer, wife would parent the children for alternating three-day weekends, overnight every Wednesday, and for three non-consecutive weeks. The parties agreed that wife would not pay husband child support and that husband would not pay wife spousal maintenance.

The parties also agreed to a property settlement where wife was awarded sole ownership of her 403(b) plan and a portion of husband's 401K. Husband was awarded the marital homestead and agreed to pay wife an additional property settlement. The parties agreed to split the cost of the mediation session and to pay their own attorney fees.

Three days later, the mediator e-mailed the parties' attorneys a letter detailing the terms of the parties' mediated settlement. In the e-mail, the mediator thanked the parties' attorneys for hiring him to mediate and wrote that he was "pleased we were able to resolve the case. Thank you both for your cooperation in working out what strikes me as a fair resolution of the case."

The mediated settlement agreement stated that "[w]e have settled all issues in the case" and that husband's attorney would draft the stipulated findings of fact, conclusions of law, and order for judgment, and the judgment and decree. Husband's attorney drafted

3

the stipulation, incorporating the terms of the mediated settlement agreement, and sent it to wife's attorney. Wife refused to sign the stipulation.

Husband moved the district court to enforce the terms of the stipulation, or, in the alternative, to enter a temporary order reflecting the custody evaluator's custody recommendations and to cease temporary child support and spousal maintenance. In separate affidavits, both husband and husband's attorney alleged that at the conclusion of an eight-hour mediation session, the parties, in the presence of the mediator and counsel, stated on a tape recording that they had reached an agreement, that they understood the terms of the agreement, that they could not change their minds, and that they intended to be bound by the agreement. Husband's attorney filed a copy of the written stipulation with the district court.

Wife moved to deny husband's motion in its entirety. In a supplemental affidavit filed months after the mediation session, wife alleged that she did not consent to the mediated settlement becoming a permanent order as she believed that mediation was confidential and that the mediated settlement was not final. She alleged that she felt pressure to settle during the mediation session because she was advised that the district court always follows the custody evaluator's recommendation. Following mediation, she decided that the parties' agreement was not in the best interests of the children and that she could not, in good conscience, agree to its terms.

After a hearing on the parties' motion, the district court filed an order finding that the parties had negotiated a fully mediated settlement under Minn. Stat. § 518.619, subd. 7 (2014), and they did so with the assistance of counsel. The district court based its finding

4

of the existence of the agreement on a recording made by the mediator in which the parties, in the presence of counsel, orally recited that they understood that their agreement would be presented to the court. The district court also concluded that the parties had entered into an enforceable contract, and ordered the parties to make a record of their mediated settlement either before the district court or by stipulation.

As the parties failed to submit a stipulation, the district court held a hearing to put the mediated settlement on the record. Over wife's objection, the district court admitted two exhibits evincing the parties' mediated settlement agreement: the mediator's e-mail to the parties' attorneys and the attached letter drafted by the mediator detailing the terms of the mediated settlement, and the stipulation drafted by husband's attorney. The district court approved the stipulation, and judgment was entered dissolving the parties' marriage.

Wife appeals.

## ISSUES

1.      Did the district court err in enforcing a mediated settlement agreement that was repudiated by wife prior to its signature and presentation to the district court?

2.      Did the district court err in concluding that the mediated settlement is an enforceable contract?

## ANALYSIS

**I.      The district court did not err in enforcing the mediated settlement agreement.**

We will set aside a district court's factual findings only if they are clearly erroneous, and we give deference to the court's opportunity to evaluate witness credibility. *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008). Factual findings are clearly erroneous

5

when they are manifestly against the weight of the evidence or not reasonably supported by the evidence as a whole. *Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 726 (Minn. 1985). When determining whether the district court's findings are clearly erroneous, we view the record in the light most favorable to the court's findings. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). The question of whether a mediated settlement is enforceable presents a question of law, which we review de novo. *Share Health Plan, Inc. v. Marcotte*, 495 N.W.2d 1, 3 (Minn. App. 1993), *review denied* (Minn. Mar. 30, 1993).

Wife asserts that a district court cannot enforce a mediated settlement agreement that has not been reduced to an MTA that is signed by both parties. She contends that the district court violated Minn. Stat. § 518.619, subd. 7, when it adopted the mediated settlement because she repudiated it a few days after the mediation session. Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn. 1996). Minn. Stat. § 518.619, subd. 7, outlines the use of alternative dispute resolution (ADR) neutrals in custody or visitation-related issues as follows:

> An agreement reached by the parties as a result of mediation shall be discussed by the parties with their attorneys, if any, and the approved agreement may then be included in the marital dissolution decree or other stipulation submitted to the court. An agreement reached by the parties as a result of mediation may not be presented to the court nor made enforceable unless the parties and their counsel, if any, consent to its presentation to the court, and the court adopts the agreement.

We conclude that the district court did not clearly err in finding that the parties reached a fully mediated settlement and that they consented to have it submitted to the

6

court for approval, as expressed by husband and his attorney in their affidavits, the mediator's e-mail and letter, and draft stipulation. Here, the record shows that after eight hours of mediating with counsel present, the parties reached a global settlement that was tape-recorded by the mediator. Under Minn. Stat. § 518.619, subd. 7, wife consented to the settlement being submitted to the district court when the parties orally recorded their agreement to the terms of the settlement and acknowledged their intent to form a binding agreement. Following mediation, husband's attorney reduced the recording to a draft stipulation that was sent to wife's attorney for wife's signature. Wife never claimed that the draft stipulation was inconsistent with the parties' mediated agreement. Wife's later repudiation of the stipulation does not nullify the settlement that was reached by the parties at mediation.

The district court's admission of the mediated settlement agreement did not violate Minn. R. Gen. Pract. 114.08(e). Rule 114.08(e) provides that notes, records, and recollections of an ADR neutral are confidential, and that "[n]o record shall be made without the agreement of both parties, except for a memorandum of issues that are resolved."[1] Here, the mediator's mediated settlement agreement falls into the exception of the rule because it is "a memorandum of issues that are resolved."

Wife relies on section 25:4(9) of *Minnesota Practice* that states that a mediated settlement is unenforceable until it is reduced to an MTA that is signed by both parties and

---

[1] Minn. Stat. § 518.619, subd. 5 (2014), requires mediation proceedings to be conducted in private, and provides that all records of a mediation proceeding remain private and not available as evidence in a marriage dissolution action.

7

approved by the district court. 14 Martin L. Swaden & Linda A. Olup, *Minnesota Practice* § 25:4(9) (3d ed. 2008). Section 25:4(9) states that:

> If the parties are able to reach an agreement through the mediation process, the agreement prepared by the mediator will be a very basic document setting forth the parties' agreement. The mediated agreement must be discussed by the parties with their attorneys, and then the attorneys must cooperate in reducing the mediated agreement to an appropriate marital termination agreement. *A mediated agreement is not enforceable by either party until such time as it is reduced to a marital termination agreement signed by the parties and approved by the court.*

*Id.* (emphasis added). A plain reading of the statute does not support such a construction. There is no language in Minn. Stat. § 518.619 (2014) requiring a mediated settlement to be reduced to a signed MTA before it is adopted by the district court. While *Minnesota Practice* remains a valuable resource for practitioners in understanding the nuances of statutes and caselaw, it is not binding legal authority.

Wife next relies upon *In re Marriage of Rettke*, 696 N.W.2d 846 (Minn. App. 2005), to argue that, like in the case here, mediated settlements that are signed by only one party are not enforceable. In *Rettke*, this court reversed the district court's enforcement of a mediated property settlement that was incorporated into an MTA, but only signed by husband and his attorney. *Id.* at 849. *Rettke* is distinguishable from this case chiefly because the husband in *Rettke* died before the dissolution was finalized, and wife refused to sign the MTA because it included additional provisions and modifications to the agreed-upon provisions of the mediated settlement agreement. *Id.* Here, wife has never disputed

8

the district court's finding that the draft stipulation accurately reflected the terms of the parties' agreement.

We conclude that the parties' mediated settlement agreement does not violate Minn. Stat. § 518.619 and that the district court did not err in adopting the parties' agreement.

**II.    The district court did not err in finding that the mediated settlement agreement is an enforceable contract.**

On this record, the district court did not err in finding that the parties entered into a binding contract. Settlement of disputes without litigation is highly favored. *See Schmidt v. Smith*, 299 Minn. 103, 107-08, 216 N.W.2d 669, 671-72 (1974); *see also Hentschel v. Smith*, 278 Minn. 86, 92, 153 N.W.2d 199, 204 (1967) (stating that "[t]his court has always supported a strong public policy favoring the settlement of disputed claims without litigation"). Courts also favor the use of stipulations in dissolution proceedings. *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997). Stipulations are treated as binding contracts. *Tomscak v. Tomscak*, 352 N.W.2d 464, 466 (Minn. App. 1984). When a district court has yet to adopt the parties' stipulation or incorporate it into a dissolution judgment, a party cannot repudiate or withdraw from the stipulation absent the other party's consent or the court's permission. *Toughill v. Toughill*, 609 N.W.2d 634, 638 (Minn. App. 2000).

Wife argues that the district court erred in finding that the parties reached a meeting of the minds because she was told that she would have additional time after mediation to review the stipulation before signing it. She points to her refusal to sign the stipulation as evidence that there was not unequivocal assent to the terms of the proposed agreement. She also disputes the district court's reliance upon husband and his attorney's version of

9

events, asserting that their affidavits do not constitute compelling proof of what the parties agreed to during the mediation session.

A mediated settlement agreement is in the nature of a contract. *Theis v. Theis*, 271 Minn. 199, 204, 135 N.W.2d 740, 744 (1965); *see Chalmers v. Kanawyer*, 544 N.W.2d 795, 797 (Minn. App. 1996) (stating settlement agreements are contractual in nature and are binding on the parties). Agreement to a mediated settlement requires a meeting of the minds on the essential terms of the agreement. *Ryan v. Ryan*, 292 Minn. 52, 55, 193 N.W.2d 295, 297 (1971). "To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said that there has been a meeting of the minds on the essential terms of the agreement." *Jallen v. Agre*, 264 Minn. 369, 373, 119 N.W.2d 739, 743 (1963). Whether parties reach an objective meeting of the minds on the essential elements of a contract is a question of fact, which this court reviews under the clear-error standard. *Morrisette v. Harrison Int'l Corp.*, 486 N.W.2d 424, 427 (Minn. 1992) (stating that "the existence and terms of a contract are questions for the fact finder"); Minn. R. Civ. P. 52.01 (providing that a district court's findings of fact are subject to a clearly erroneous standard of review).

Here, the parties' recorded statements that they agreed to the terms of the settlement and that they intended to be bound demonstrate a meeting of the minds. A settlement does not need to be in writing and will be enforced when the facts show that the required contractual elements have been met. *Jallen*, 264 Minn. at 373, 119 N.W.2d at 742-43. The mediated settlement was also supported by legal consideration. *Kielley v. Kielley*, 674 N.W.2d 770, 777 (Minn. App. 2004). "Consideration may consist of either a benefit

10

accruing to a party or a detriment suffered by another party." *Id.* (quotation omitted). Here, wife waived a contested custody hearing, in exchange for the mediated settlement, and the parties agreed that wife would not pay child support, which would have been required under Minnesota law. Husband acted in reliance on the agreement by preparing all of the necessary paperwork to effectuate the settlement, refinancing the real estate, and paying monies to wife as required by the agreement.

Contrary to wife's claim that there is insufficient evidence on the record to demonstrate a meeting of the minds, the affidavits of husband and husband's attorney constitute direct evidence of the terms of the mediated settlement. *See, e.g.*, Minn. R. Civ. P. 56.05 (in a summary judgment motion, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence"). The district court acted within its discretion when it credited husband and husband's attorney's version of events over wife's version. *Vangsness*, 607 N.W.2d at 472 (noting that "appellate courts defer to trial court credibility determinations"). Further, wife does not allege the existence of any material differences in the terms of the agreement. For these reasons, the district court did not err in concluding that the parties' mediated settlement constituted an enforceable contract.

Finally, wife asks this court to vacate the dissolution judgment on the ground that she felt pressure to sign the stipulation without having additional time to review it in its entirety before she signed it. We review a district court's decision to vacate a dissolution judgment for abuse of discretion. *Toughill*, 609 N.W.2d at 639. But there is no such decision here. The record does not establish that wife moved the district court to vacate

11

the judgment; hence, we do not consider her request on appeal.  *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

## D E C I S I O N

The district court properly adopted a stipulation reflecting the parties' mediated settlement agreement despite wife's repudiation of the agreement before it was reduced to an MTA that was signed by both parties.  Wife consented to the settlement being submitted to the district court when the parties, who were represented by counsel, orally recorded their agreement to the terms of the settlement and acknowledged their intent to form a binding agreement.  The agreement is also a binding contract as the parties reached a meeting of the minds on its essential terms, and it was supported by consideration.

**Affirmed.**