*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0522**

Leslie E. Sheehy Lee, petitioner,
Appellant,

vs.

Travis W. Kalis,
Respondent,

County of Le Sueur,
Respondent.

**Filed March 18, 2024
Affirmed
Reyes, Judge**

Le Sueur County District Court
File Nos. 40-F5-02-000689; 40-FA-06-544

Michael D. Dittberner, Linder, Dittberner & McSweeney, Ltd., Edina, Minnesota; and

Tami L. Peterson, Saxton Peterson Law Firm, Mankato, Minnesota (for appellant)

Jacob M. Birkholz, Birkholz & Associates, LLC, Mankato, Minnesota (for respondent
Travis W. Kalis)

Brent Christian, Le Sueur County Attorney, Le Center, Minnesota (for respondent County
of Le Sueur)

Considered and decided by Reyes, Presiding Judge; Larson, Judge; and Ede, Judge.

**REYES**, Judge

Mother argues that the district court erred by determining that the parties entered into a binding extrajudicial settlement agreement to reduce father's child-support obligation because (1) the agreement was not contractually sound and (2) the district court failed to make findings that the agreement was fair and reasonable to all interested parties. We affirm.

## FACTS

In July 2006, the district court ordered respondent Travis W. Kalis (father) to pay continuing child support to appellant Leslie E. Sheehy Lee (mother) to provide for the divorced couple's two children, I.K. (born September 2000) and V.S. (born November 2005). The district court's most recent child-support order from 2013 requires father to pay mother $1,139 in monthly child support.

Beginning in July 2015, the parties arranged that father would make his child-support payments using Venmo, an application that facilitates electronic money transfers. Each month, mother would send father a Venmo request for child-support payments, and father would transfer the requested amount. Beginning in January 2016 and continuing through May 2019, mother only requested $1,000 from father in monthly child support. Then, following I.K.'s graduation from high school, mother reduced her Venmo requests to $500 per month, which father paid from June 2019 until March 2022.

*Mother's action for unpaid child support and father's motion to modify his child-support obligation.*

Seven years after the parties' Venmo arrangement began, mother filed an affidavit of arrears in July 2022 alleging that father had underpaid his child-support obligation by $32,259. Mother attested that, despite father owing $1,139 in monthly child support based on the district court's 2013 order, father had only paid $1,000 per month from November 2015 until May 2019, and only $500 per month from June 2019 through March 2022. Mother further stated that father had failed to pay any child support from April 2022 through July 2022.

Father subsequently filed a motion to modify his child-support obligation both prospectively and retroactively. In an accompanying affidavit, father attested that the parties had reached an extrajudicial settlement agreement to limit his monthly child-support obligation to $1,000 until I.K. graduated from high school and to $500 for each month thereafter. As exhibits to his affidavit, father attached email exchanges between the parties that included draft contracts to modify his child-support obligation, as well as a history of the parties' Venmo transactions which reflected his child-support payments since July 2015.

The exhibits to father's affidavit showed that, in June 2015, father sent mother a written agreement that called for him to pay $1,000 per month in child support, to pay for health-insurance costs, and to visit the parties' children at least five times per year in exchange for mother requesting the district court to remove its 2013 child-support order. In response, mother sent father a revised draft agreement in July 2015 that called for father

to pay $1,260 in monthly child support and to cover 50% of all co-pays and medical bills outside of the children's health insurance. The parties' Venmo transactions reflect that mother requested, and father paid, $1,150 in child support in November and December 2015, $1,000 per month from January 2016 until May 2019, and $500 per month from June 2019 until May 2022.

> *The district court determines that the parties entered into an agreement to reduce father's child-support obligation.*

A child-support magistrate (CSM) held an evidentiary hearing on father's child-support-modification motion in December 2022. During the hearing, father acknowledged that the parties had no written agreement to modify his child-support obligation. Mother testified that she had requested, and father had made, Venmo payments of $1,000 per month between 2015 and summer 2019 and $500 per month thereafter until March 2022. Both parties testified that they established the Venmo payment system to lower father's child-support obligation so that he could see their children more often. Father also testified that both parties wanted to create their own child-support agreement to avoid county involvement in the parties' affairs, a claim that mother did not dispute.

Following the hearing, the CSM determined that (1) the parties' Venmo transactions established a binding agreement regarding the payment of basic support; (2) the parties abandoned that agreement when father failed to pay mother's April 2022 request; and (3) the parties' agreement did not modify the district court's 2013 order but did limit what father had to pay for past support. The CSM therefore ordered that the child-support records reflect that father owed no additional support through March 2022, but that father

4

would be required to pay child support in accordance with the 2013 order moving forward. The district court subsequently denied mother's motion to review the CSM's order, determining that the CSM properly found that the parties had entered into a binding extrajudicial agreement to reduce father's child-support obligation.

This appeal follows.

## DECISION

Mother argues that the district court should not have adopted the CSM's determination that father did not owe past-due child support before March 2022 because (1) the parties' Venmo transactions did not constitute a binding agreement to reduce father's child-support obligation and (2) even if the parties had reached a binding agreement, the district court failed to make findings that the agreement was fair and reasonable to all interested parties. We are not persuaded.

When a district court affirms a CSM's decision, it implicitly adopts the CSM's decision, which then becomes part of the district court's order that is subject to appellate review. *See* Minn. R. Gen. Prac. 378.01 (noting review may be taken to this court from final ruling of CSM "or" district court's order deciding motion for review). This court reviews determinations of past-due child support for an abuse of discretion. *LaChapelle v. Mitten*, 607 N.W.2d 151, 166 (Minn. App. 2000), *rev. denied* (Minn. May 16, 2000). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted).

Under Minn. Stat. § 518A.39, subd. 2(f) (Supp. 2023), a district court cannot retroactively modify child support before the period in which a petitioning party has served the responding party with a modification motion. However, the district court's adoption of an alternative effective date is not considered a retroactive modification of support. *Id.* The district court may select an alternative effective date for a support order if the parties enter into a binding agreement for an alternative effective date. *Id.*, subd. 2(l) (Supp. 2023).

Here, the district court did not approve the parties' arrangement for father to pay $1,000 in monthly child support using Venmo. While judicial approval is not required to establish a binding agreement to reduce father's child-support obligation, an extrajudicial agreement regarding child-support payments is enforceable only if it is (1) contractually sound and (2) otherwise fair and reasonable to all interested parties. *Kielley v. Kielley*, 674 N.W.2d 770, 776-77 (Minn. App. 2004).

I.  **The district court did not err by determining that the parties reached a contractually sound agreement to reduce father's child-support obligation.**

Mother asserts that the parties' Venmo transactions do not constitute a contractually sound extrajudicial agreement because (1) the parties did not memorialize their agreement in writing or a tape recording; (2) the parties never agreed on the essential terms of the agreement; and (3) father offered insufficient consideration to support the agreement. We disagree.

6

**A.    Extrajudicial agreements are not required to be memorialized in a written stipulation or a tape recording.**

Mother initially contends that no binding extrajudicial agreement existed between the parties because they never completed a written stipulation or a tape recording that established the agreement's material terms.

Extrajudicial agreements are contractual in nature. *Theis v. Theis*, 135 N.W.2d 740, 744 (Minn. 1965). While ordinarily the terms of an agreement should be stated to the district court or reduced to writing, it is not essential to their enforcement, as long as the terms are definite. *Id.* at 745. Because extrajudicial agreements are not required to take a specific form, mother's first argument fails.

**B.    The district court did not clearly err by finding that the parties' Venmo transactions created an implied-in-fact contract.**

Mother next contends that the purported extrajudicial agreement was not binding because the parties' differing written drafts of the agreement lacked definite terms regarding father's monthly child-support obligation, how the parties would split insurance copayments, and the agreement's duration.

For an extrajudicial agreement to be enforceable, there must be such a definite offer and acceptance to demonstrate an agreement on all essential terms. *Tornstrom v. Tornstrom*, 887 N.W.2d 680, 686 (Minn. App. 2016), *rev. denied* (Minn. Feb. 14, 2017). Whether the parties reached an objective agreement is a factual question that this court reviews for clear error. *Id.*

Even when there is no express agreement, the law may imply a contract from the circumstances or acts of the parties. *Bergstedt, Wahlberg, Berquist Assocs., Inc. v.*

7

*Rothschild*, 225 N.W.2d 261, 263 (Minn. 1975). For a court to find a valid implied-in-fact contract, the circumstances must "clearly and unequivocally" indicate the intent of the parties to the agreement to enter into a contract. *Webb Bus. Promotions, Inc. v. Am. Elec. & Ent. Corp.*, 617 N.W.2d 67, 75 (Minn. 2000). However, for implied-in-fact contracts, "it is not expected that the elements of [the] contract will be as vividly portrayed as by evidence of an express contract." *Gryc v. Lewis*, 410 N.W.2d 888, 891 (Minn. App. 1987) (quotation omitted).

The evidence in the record supports the district court's finding that the parties agreed to lower father's obligation to $1,000. Father's draft written agreement proposed $1,000 monthly payments, and mother in response proposed $1,260 monthly payments. Mother subsequently sent father Venmo requests for $1,000 payments, which father paid from January 2016 through May 2019, for a total of 41 consecutive payments. Then, from June 2019 to March 2022, father paid mother's requests for $500 in monthly child support, for a total of 33 consecutive payments. This prolonged and consistent arrangement between the parties supports the district court's determination that they reached an agreement to reduce father's child-support obligation. *See, e.g.*, *Bergstedt*, 225 N.W.2d at 263 (concluding that parties maintaining an architect-client relationship for two years had implied-in-fact contract).

Similarly, the record supports the district court's determination that the parties assented to the agreement's durational term. Father testified that the parties agreed that he would pay $1,000 through Venmo until I.K. graduated in June 2019, after which the payments would be reduced to $500 per month. Father's testimony is corroborated by both

8

the parties' Venmo history and mother's testimony that father always paid her Venmo requests.

Furthermore, although mother and father's written proposals differed regarding father's obligation to pay medical expenses not covered by the parties' insurance, the record supports the district court's determination that the parties agreed on this term as well. Father testified that he paid mother for unreimbursed medical expenses whenever she requested those costs through Venmo. Father's testimony is again corroborated by the parties' Venmo transactions, which reflect that he completed numerous requests that mother made for medical expenses.

Because the record supports the district court's determination that the parties agreed on all material terms of their extrajudicial agreement, the district court did not clearly err by finding that the parties' Venmo transactions "clearly and unequivocally" provided evidence of an enforceable implied-in-fact contract. *See Webb*, 617 N.W.2d at 75.

**C.    Adequate consideration supported the parties' extrajudicial agreement.**

Mother argues that, even if the district court relied only on the Venmo payments rather than the parties' written draft agreements to determine that the parties had a contractually sound agreement, that agreement lacked consideration.

All binding agreements require consideration. *Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 463 (Minn. App. 2001), *rev. denied* (Minn. July 24, 2001). "Consideration is something of value given in return for a performance or promise of performance." *Id.* (quotation omitted). Whether an agreement is supported by sufficient consideration is a

legal question that this court reviews de novo. *Id.* We "will not examine the adequacy of consideration so long as something of value has passed between the parties." *Id.*

At the child-support-modification hearing, both parties testified that they established the Venmo payment system as a framework to lower father's support so that he could see their children more often. Father also testified that both parties wanted to have an arrangement between themselves to avoid county involvement in the parties' affairs. Indeed, during the seven-year period in which father paid mother's Venmo requests for child support, the parties avoided expending time and financial resources with further litigation. Because eliminating county involvement and promising to increase his visits to Minnesota was "something of value given" in return for mother lowering father's support obligation, we conclude that sufficient consideration supported the parties' extrajudicial agreement. *Powell*, 626 N.W.2d at 463.

We conclude that the district court did not err by determining that the parties reached a contractually sound agreement to reduce father's child-support obligation and that adequate consideration supported the parties' agreement.

## II. The district court did not abuse its discretion by failing to make findings on whether the parties' agreement was fair and reasonable.

Mother argues that, even if the parties' entered into a contractually sound extrajudicial agreement, the district court failed to make the findings required by *Kielley* to demonstrate that the agreement was "fair and reasonable" to all interested parties. We are not persuaded.

Under *Kielley*, when evaluating whether an extrajudicial agreement is fair and reasonable, "the district court should consider and make findings" addressing whether the agreement is unfair and unreasonable (1) to the parties' children because the agreement will adversely impact them; (2) to one of the parties because of overreaching, lack of full disclosure, lack of an opportunity to consult with counsel, or some other reason; (3) to the state because the stipulation would require one of the parties or their children to seek public assistance; and (4) to the court because the agreement will unnecessarily complicate future court proceedings. 674 N.W.2d at 778-79. Here, while the district court made some relevant findings, it did not explicitly address each of the *Kielley* factors.

Reviewing courts, while recognizing that findings are legally insufficient, may examine the record to determine whether a decision is objectively justified. *In re Tanghe*, 672 N.W.2d 623, 625 (Minn. App. 2003). This court may also examine whether the record adequately supports a district court's implicit findings of fact underlying its legal determinations. *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009). Furthermore, if it is clear from the record and the district court's findings that, on remand, the district court would undoubtedly make findings that comport with the legal requirements, then remand is not required. *See Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985).

Here, the district court found that father's support obligation under the parties' agreement was a "minimal change" to the court-ordered payments. It also found that mother had a gross monthly income of over $16,000; mother was voluntarily

11

underemployed, with an imputed gross monthly income of over $24,000; and that V.S. is anticipated to complete high school in May 2024.

These findings support that the parties' extrajudicial agreement was fair and reasonable under the *Kielley* factors. There is no evidence that the "minimal" $139 reduction in monthly child support materially impacted the children's interests. The record shows that, despite being voluntarily underemployed and working only two days a week, mother made nearly $200,000 per year, an adequate income to provide for the parties' children. Nor is there any evidence that either mother or the children received public assistance during the seven-year period of reduced payments, demonstrating that the agreement was not unfair to the state. Additionally, there is no evidence that the agreement unnecessarily complicated the parties' future court proceedings. Not only did the parties abide by their agreement for seven years without court intervention, but the district court determined that the agreement did not modify the 2013 support order, so there was a sufficient baseline to decide future support-modification motions. *Contra Maschoff v. Leiding*, 696 N.W.2d 834, 840-41 (Minn. App. 2005) (remanding for further findings when district court's order failed to address parties' then-existing circumstances or provide baseline for deciding future modification motions). Finally, although the record contains some evidence that father failed to disclose his financial assets to mother, the agreement was still fair to both parties.

Although it would have been preferable for the district court to have explicitly addressed all of the *Kielley* factors, both the record and the district court's findings support that the parties reached an agreement that was fair and reasonable to all interested parties.[1]

**Affirmed.**

---

[1] Although appellants requested a precedential opinion reversing the district court, our decision applies well-established legal principles regarding contract interpretation to the unique factual circumstances presented in this case. We therefore conclude that a nonprecedential opinion is appropriate to resolve this matter.